**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 1999-CA-01037-SCT**

*COVINGTON COUNTY, MISSISSIPPI SCHOOL DISTRICT a/k/a BOARD OF*
*EDUCATION OF COVINGTON COUNTY, MISSISSIPPI*

*v.*

*G.W., A MINOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/1999 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TOMMY BOTT ROGERS |
| ATTORNEY FOR APPELLEE: | DAVID SHOEMAKE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 07/27/2000 |
| MOTION FOR REHEARING FILED: | 8/10/2000; denied 10/5/2000 |
| MANDATE ISSUED: | 10/12/2000 |

**BEFORE BANKS, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On December 7, 1998, Candy Knight, a teacher at Seminary Attendance Center in the Covington County School District, sent a note to Assistant Principal Richard Thames during school hours advising Thames that a student had informed her that G.W., a 17-year-old minor, was drinking beer in the school parking lot. The note was then delivered to Principal Billy Ray Smith. Principal Smith and a school security officer went to the parking lot and found empty beer cans in the back of G.W.'s truck. Upon request, G.W. unlocked his vehicle and allowed Smith and the officer to search his truck. Seven unopened bottles of beer were found in a locked toolbox. Upon questioning by Principal Smith, G.W. admitted that the beer was his and that he had purchased the beer in Covington County. G.W., however, did not appear to be under the influence on the morning of the incident. G.W.'s mother was immediately notified, and G.W. was suspended for five days.

¶2. On December 8, 1998, Ronnie Graves, the Superintendent of Education, mailed a letter to G.W. and his father notifying them of a hearing on the issue of expulsion. On December 17, 1998, the School Board conducted the hearing and expelled G.W. for the remainder of the school year. G.W. was to be placed in an alternative school to finish his last semester and would be allowed to graduate with his senior class. Thereafter, G.W. filed a petition for appeal and/or injunctive relief in the Chancery Court of Covington County, Mississippi. By order, dated January 5, 1999, the chancellor ordered G.W. returned to school "until such time as a proper hearing is conducted in compliance with the Covington County Schools Handbook." The chancellor noted that the notice given to G.W. and his parents was not given by a board

attorney within 24 hours of the incident as the handbook requires.

¶3. Subsequent to the chancellor's order, the School Board re-mailed its notices and letters to G.W. and his parents and scheduled a second hearing on the expulsion issue. On February 11, 1999, the second hearing was held, and G.W. was once again expelled for the remainder of the school year. The next day, G.W. filed a supplemental petition for appeal and/or injunctive relief with the chancery court. The chancery court granted G.W.'s request and entered a temporary restraining order prohibiting the School Board from expelling G.W. until a final decision was reached. On May 20, 1999, the chancellor found the school did not provide proper notice as outlined in the school's handbook and ordered that G.W. be placed back in school.[1] Aggrieved by the chancellor's decision, the Covington County School District timely perfected this appeal.

## STANDARD OF REVIEW

¶4. "In Mississippi, our standard of review for factual determinations made by a trial judge sitting without a jury is the substantial evidence standard." *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So. 2d 200, 204 (Miss. 1998). "We will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id.*

## STATEMENT OF THE LAW

### I.

### WHETHER THE MINOR WAS AFFORDED PROPER PROCEDURAL DUE PROCESS BY THE COVINGTON COUNTY SCHOOL DISTRICT

¶5. The Covington County School District asserts that G.W. was afforded procedural due process and that the school's failure to send a notice through its board attorney within twenty-four hours did not create "substantial prejudice" to G.W. The school district also argues that the chancellor erred by not addressing the substantial prejudice issue in his ruling. Accordingly, the school district contends that no substantial prejudice occurred and that the "manner of the notice, if wrong, was at the most, harmless error." This Court agrees that G.W. was not denied due process.

¶6. At the time of the incident, G.W. was subject to the rules outlined in the Covington County School Handbook, which read in relevant part as follows:

> **No pupil attending any school in this district shall be permitted to carry upon his/her person or have in his/her possession (in any way) alcoholic beverages,** morphine, marijuana, cocaine, opium, heroin, (or their derivatives or compounds), drugs commonly called LSD, "pep" pills, tranquilizers, or any other narcotic drug, barbiturate, substance, ingredient, or compound which, when taken orally, intravenously, inhaled, or in any other manner, may cause the person to be under the influence thereof; no pupil shall use any of the same at any school of this school district.

> \*\*\*

> When a principal determines that a student has violated one or more of the specific standards of conduct described in "Student Conduct," he/she may recommend expulsion or long-term suspension

of such student to the superintendent. **The superintendent shall, within 24 hours, through the board attorney, give such student and his/her parent or guardian appointed by the Chancery Court any notices due him/her consistent with state and federal due process requirements at least five (5) days prior to said hearing.** Such hearing shall be held within ten (10) days of the notice of expulsion or long-term suspension where possible.

(emphasis added). In the present case, however, it was the superintendent, not the board attorney, who mailed the notice to G.W.'s father on December 8, 1998. In his order, dated May 20, 1999, the chancellor reasoned as follows:

> First of all, the Covington County School Board has published and in fact requires all students and parents to acknowledge that they have received a copy of the Covington County handbook which sets forth the criteria that is expected of a student and his parents as well as the responsibilities of the principal, administrators and school boards in the handling of student matters. It is the responsibility of this Court to give any student and in particular G.W. all of the rights that are incorporated in that handbook since the same could be viewed in fact as the "law of the school district." As with any law it puts both responsibilities on the school board as well as on the students and parents. Of course as adults or members who are overseeing a school system we cannot expect for children to comply and to do things that they are expected to unless we as adults likewise do things in the manner in which we are required and expected to do. In fact it is probably more important for us as adults to set a proper example and to show that we are willing to abide by the rules and are not trying to tell minors or students, "Do as we say, not as we do."... In saying that, this Court however strongly feels that the due process rights of any and all persons and in particular minors are a very fundamental and sacred right... The handbook which has been relied on to expel the minor child, G.W., from the Seminary Public School applies to both the minor and the school board...**however whenever a school board expects strict adherence by a minor then as adults they should expect nothing less from themselves. Whether it have been by mistake, ignorance of the rules or misinterpretation or because "this is the way it has always been done," this Court in looking at the provisions of the handbook concerning expulsions can find no ambiguity and finds that the handbook in fact required them to have a notice sent by the school board attorney which was not done...Based upon this Court's interpretation that the handbook controls and since the proper steps were not taken in this manner, this Court has no alternative except for to reinstate the student....**

(emphasis added). The chancellor, in his ruling, placed great emphasis on the fact that the board did not comply with its own handbook requirement, which says written notice must be given by the board attorney within 24 hours of the incident. Thus, the chancellor implies that the school's failure to comply with its own rules violated G.W.'s due process rights. Consequently, we must now determine whether the school's failure to give notice through its board attorney, as outlined in the student handbook, denied G.W. due process.

¶7. The Mississippi Legislature has provided the governing bodies of local schools with substantial authority to regulate the activities of students and punish students for violation of school policies. Miss. Code Ann. § 37-7-301 (Supp. 1999). "While school boards have substantial disciplinary authority, that authority is legal in its derivation and its exercise is subject to the Constitution of the United States." *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So. 2d 237, 240 (Miss. 1985). Consequently, there is no question that a student facing suspension or expulsion has a property interest that qualifies for protection under the Due

Process Clause of the Fourteenth Amendment to the United States Constitution. *Warren County Bd. of Educ. v. Wilkinson*, 500 So. 2d 455, 458 (Miss. 1986).

¶8. In *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975), the United States Supreme Court set forth the minimum due process requirement for students facing a short-term suspension as follows:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

However, the Court also noted that, "longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss v. Lopez*, 419 U.S. at 584. Additionally, this Court has previously held that a violation of due process may only be sustained where the aggrieved party shows "substantial prejudice." *Jones v. Board of Trustees*, 524 So. 2d 968, 972 (Miss. 1988); *see also Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984); *Hill v. Rankin County, Miss. Sch. Dist.*, 843 F. Supp. 1112, 1118 (S.D. Miss. 1993). This Court finds that G.W. has failed to show substantial prejudice.

¶9. In *Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984), the Fifth Circuit concluded that a suspension could not result from a due process violation where there was substantial evidence to support a finding that the student admitted to the charges. *See also Hill*, 843 F. Supp. at 1118 (where student admitted to the charges brought against him, the court found his indefinite suspension was not the result of a procedural due process violation but rather of his own misconduct). Similarly, G.W. admitted that the beer found in his truck was his and that he was the one who had purchased the alcohol. Such a confession, on its own, negates the possibility that G.W. was denied procedural due process.

¶10. G.W. next contends that he was denied due process when the school failed to send notice through the superintendent, and not the board attorney as outlined in the handbook. This Court also finds this argument to be without merit. G.W. was suspended on December 7, 1998, immediately following the discovery of beer in his truck. His mother was immediately notified of the situation. On December 8, 1998, the superintendent mailed a letter to G.W. and his father, notifying them that a hearing had been set for December 17, 1998, on the expulsion issue. The letter explained that the recommendation for expulsion was based on G.W.'s violation of the Drug and Alcohol section of the handbook. The letter also gave the date and time of the hearing, informed G.W. and his father that G.W. was entitled to be represented by counsel if he so desired, and informed G.W. that his disciplinary record would also be considered at the hearing. Additionally, the letter contained attachments which outlined the charge against G.W., which was possession of alcohol on school premises. G.W. received the notice on December 11, 1998, and his father received the notice on December 18, 1998. G.W. and both parents, however, were present for the formal hearing and were once again advised of their right to have counsel present. They waived this right.

¶11. G.W. and his parents argue that they did not receive timely notice of the charges being brought against G.W. By reading the language of the handbook, it is not clear whether notice must be sent or actually received within 24 hours of the incident. It is clear, however, that notice must be received 5 days prior to the formal hearing. Although it is important to point out that G.W.'s father did not receive timely notice for the first formal hearing, his presence at the hearing indicates that he was aware of the proceedings.

Furthermore, the school board conducted a second formal hearing, wherein it did properly notice G.W.'s father. We emphasize that this Court is not reaching the conclusion that the school board has the inherent authority to violate its own rule, and we frown on such lack of proper procedure. A school board which adopts rules that it does not follow should expect no more from its students. Rather than sending the notice through certified mail, the school district should have hand-delivered the notice. However, taking into consideration that both parents were present at the first formal hearing, along with the fact that G.W. did receive a second formal hearing, we find this issue to also be without merit.

¶12. Furthermore, no material information was missing from his notice. Although sending the notice through the board attorney would have been proper under the guidelines in the handbook, no additional information or language would have been included in the letter. While it is true that there are many punishments that would seem less harsh or more appropriate in this case, we must recognize that the law commits this entire matter to the discretion of the school board. *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So. 2d at 242. This school district has imposed a zero tolerance policy, which absent a violation of G.W.'s due process rights, it has the discretion to enforce. We find that no such due process violation occurred.

## II.

### WHETHER THE SCHOOL DISTRICT CONDUCTED A REASONABLE AND PROPER SEARCH OF G.W.'S VEHICLE

¶13. The school district argues that the chancellor erred by finding that the school should have first obtained a search warrant, notified G.W.'s parents, and given G.W. an opportunity to speak with his parents before searching G.W.'s vehicle. In his order, dated May 20, 1999, the chancellor reasoned as follows:

> This Court has questions as to the search that was conducted of the minor's vehicle without first of all obtaining a search warrant and most importantly taking statements and requiring a student to open a locked tool box when he was not in fact present in the vehicle and had to called from class...when a complaint is received that a child becomes a subject of an investigation then this Court feels that first of all prior to taking any statements that a parent shall be notified and the student given an opportunity to talk with that parent prior to making any statements or allowing any searches. Secondly, since at the time of the search the minor was not in the vehicle and in fact was not in control of that vehicle then the safe route to take would be especially [sic] since a law officer was present to obtain a search warrant to search said vehicle.

This Court disagrees with the chancellor's ruling and finds that the chancellor erred in reaching this conclusion.

¶14. In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), a teacher reported that she saw T.L.O. smoking during school, and the principal searched T.L.O.'s purse for the cigarettes. While recognizing that Fourth Amendment rights do attach to searches and seizures conducted by a school official, the United States Supreme Court upheld the legality of the search of T.L.O.'s purse, and found that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341. "By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense." *Id.* at 343. "At the same time, the reasonableness standard should ensure that the interests

of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." ***Id.***

¶15. The Court then set forth the following twofold test to determine when a search is reasonable:

> (1) First, one must consider whether the search as actually conducted was justified at its inception;

> (2) Second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place.

***Id.*** "It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively proved the ultimate fact in issue, but only have 'any tendency to make the existence of fact that is of consequence to the determination of the action more probable or less probably than it would have been without the evidence." ***Id.*** at 345. "The requirement of reasonable suspicion is not a requirement of absolute certainty." ***Id.*** at 346.

¶16. Furthermore, the Supreme Court held that "school officials need not obtain a warrant before searching a student who is under their authority." ***Id.*** at 333, 340. "The warrant requirement, in particular, is unsuited to the school environment: requiring a teacher obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in schools." ***Id.*** at 340.

¶17. In ***S.C. v. State***, 583 So. 2d 188 (Miss. 1991), a student told the assistant principal that S.C. had offered to sell him handguns and that those handguns were at school. The assistant principal, along with another assistant principal, removed S.C. from class and asked him to open his locker. S.C. complied and two guns were found in his locker. ***Id.*** at 189. This Court found the search of S.C.'s locker to be reasonable. While it is important to note that "students have a reasonable expectation of privacy in their school lockers," we must also emphasize that high school students fall into a different and generally less suspect class. ***Id.*** at 191-92.

¶18. In the present case, Principal Smith was informed that G.W. had been drinking in the school parking lot. Principal Smith later testified that this story was corroborated by other students who saw G.W. drinking and that he knew of no reason or motive that would cause them to lie about G.W.'s actions. "Absent information that a particular student informant may be untrustworthy, school officials may ordinarily accept at face value the information they supply." ***Id.*** at 192. Furthermore, Principal Smith and the school security officer saw empty beer cans in the back of G.W.'s truck. At the very minimum, reasonable suspicion was established.

¶19. G.W. argues that a search warrant should have first been secured by the school district before it searched his vehicle. This Court rejects his contention. G.W.'s argument clearly ignores the principle set forth in ***T.L.O.***, that a search warrant is not required when a search is being conducted by a school official. Furthermore, all students who bring a vehicle onto school premises must register the vehicle. G.W.'s registration form was signed by his mother and specifically states that "vehicles will be routinely checked/searched."

¶20. G.W. also argues that there is a greater expectation of privacy in an automobile than in a school locker. While this may be true when one is driving down the street, we can hardly say such a higher expectation of privacy should be had in a car on school property as opposed to a school locker. In ***State v. D.T.W.***, 425 So. 2d 1383 (Fla. Dist. Ct. App. 1983), a District Court of Appeal of Florida held that a

search of a student's vehicle was proper under the Fourth Amendment where a teacher's aide patrolled the parking lot and saw drug paraphernalia in a student's car. The Florida court reasoned that "the realities of the school setting require that teachers and other school personnel have the power to make an immediate, limited search, for contraband, weapons, or other prohibited objects or substances, when a reasonable subjective suspicion supported by objective, articulable facts would lead a reasonably prudent person to suspect that these items or present, or that school regulations are being violated." ***Id.*** at 1386. The Florida court further noted that society places a high value on education, which "requires an orderly atmosphere which is free from danger and disruption. The introduction of dangerous or illegal items or substances into the school presents a hazard for teachers and students." ***Id.***

¶21. In the present case, there was reasonable suspicion to believe that G.W. had been in the parking lot drinking before class. A student reported the incident, and several other students confirmed the report. Empty beer cans were found in the back of G.W.'s truck. A reasonable school official under these circumstances would and should have regarded this information sufficient to take action. The search was justified and was reasonably related to the student's assertion that G.W. had been in the parking lot drinking. Therefore, we conclude that the chancellor erred by finding the search of G.W.'s vehicle to be illegal under the Fourth Amendment.

### III.

### WHETHER HEARSAY EVIDENCE WAS THE SOLE BASIS UPON WHICH THE COVINGTON COUNTY SCHOOL BOARD BASED THEIR ULTIMATE DECISION TO EXPEL G.W.

¶22. G.W. contends that he was denied a fair and impartial hearing before the school board because the board considered hearsay testimony, i.e., the principal testified to what other students had told him about the incident. This Court rejects this argument and finds it to be without merit. G.W. was charged with possession of alcohol. While it is true that the principal testified that other students informed him that G.W. had been drinking, the principal also testified to what he actually saw. Furthermore, "hearsay testimony from school employees is apparently treated differently, and admitting this type of hearsay does not deprive a student of due process." ***Jones v. Board of Trustees***, 524 So. 2d at 973; *see also* ***Boykins v. Fairfield Bd. of Educ.***, 492 F.2d 697, 700-01 (5th Cir. 1974). G.W. was charged and expelled for possession of alcohol, not for being under the influence. The only purpose for the principal describing what other unnamed students had told him was to show the reason he went to G.W.'s vehicle in the first place. Furthermore, hearsay testimony from a school official does not deprive a student of any due process rights. Accordingly, this issue is without merit.

¶23. G.W. next asserts that he was denied due process because he did not receive the names of witnesses prior to the first hearing. G.W. did, however, receive the names of witnesses who would testify prior to the second hearing. "Since how much process is due depends on the particular circumstances, a denial of a list of witnesses will not always amount to a prejudicial denial of due process." ***Jones v. Board of Trustees***, 524 So. 2d at 972.

¶24. Likewise, in ***Keough***, 748 F.2d at 1081, a student was not provided with a list of witnesses prior to the hearing. The Fifth Circuit acknowledged that the argument was "not without some basis" and that such safeguards should be afforded to satisfy long-term suspensions. ***Id.*** However, the Court held that "the standards of procedural due process are not wooden absolutes" and that "the sufficiency of procedures

employed in any particular situation must be judged in the light of the parties, the subject matter, and the circumstances involved." *Id.* Accordingly, the Fifth Circuit held that the student was not denied due process because the student and his parents were fully appraised of the charges, the underlying facts supporting the charges, the nature of the hearing, and that they were entitled to counsel. *Id.* at 1082.

¶25. Similarly, this Court finds that G.W. was not denied due process when the school failed to provide a list of witnesses prior to the first hearing. G.W. was appraised of the charge against him, the nature of the hearing, and that he was entitled to have counsel present. Furthermore, he has failed to show exactly how he was substantially prejudiced by not having the names prior to the first hearing. Therefore, this issue is also without merit.

## CONCLUSION

¶26. The school district's failure to follow the procedures set forth in the handbook, while problematic, did not deny G.W. any substantive or due process rights under the Fourth and Fourteenth Amendments to the United States Constitution. Any possible due process violations were cured when G.W. received the second formal hearing. Additionally, we find the search of G.W.'s automobile by a school official, while on school property, did not violate the search and seizure clause of the Fourth Amendment. Therefore, this Court reverses and renders the decision of the Covington County Chancery Court and reinstates the decision of the Covington County School District.

¶27. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR.**

1. This case is not moot and fits within the exception as outlined in *Board of Trustees v. Knox*, 638 So. 2d 1278, 1282 (Miss. 1994).