IN RE INTEREST OF MICHAEL R., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
MICHAEL R., APPELLANT.
662 N.W.2d 632

Filed June 3, 2003.   No. A-02-818.

Thomas C. Riley, Douglas County Public Defender, and John J. Jedlicka for appellant.

James S. Jansen, Douglas County Attorney, and James M. Masteller for appellee.

HANNON and MOORE, Judges, and BUCKLEY, District Judge, Retired.

BUCKLEY, District Judge, Retired.

## INTRODUCTION

Michael R. appeals from an order from the separate juvenile court of Douglas County, Nebraska, finding Michael guilty of possessing marijuana and related drug paraphernalia. The court also found that Michael had deported himself so as to injure or endanger seriously the morals or health of himself or others by possessing marijuana and drug paraphernalia. For the reasons set forth below, we affirm.

## BACKGROUND

On November 7, 2001, the State filed a three-count petition alleging, inter alia, that Michael was born on March 24, 1985, and was therefore a child under the age of 18. In count I of its petition, the State alleged that Michael was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002) in that he had knowingly or intentionally possessed marijuana weighing 1 ounce or less, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2002). In count II, the State alleged that Michael fell under § 43-247(1) in that he had used, or possessed with the intent to use, drug paraphernalia to manufacture, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance, in violation of Neb. Rev. Stat. § 28-441 (Reissue 1995). In count III, the State alleged that Michael was a juvenile as described in § 43-247(3)(b) in that he had deported himself so as to injure or endanger seriously the morals or health of himself or others by possessing marijuana or drug paraphernalia.

On February 7, 2002, Michael filed a motion to suppress, alleging that all of the State's evidence against him was the product of an illegal search and seizure. On February 27, a hearing was held on Michael's motion to suppress.

At that hearing, LaKeith Richardson testified that on September 12, 2001, he was employed in the security department at Northwest High School (Northwest). Richardson testified that his job was to maintain a safe and secure environment for students and staff, in addition to enforcing the Omaha Public Schools' code of conduct. Richardson testified that Northwest

prohibits the possession of drugs and drug paraphernalia on school property.

Richardson testified that while he was outside Northwest's common area during lunch, he observed Michael approach another student. Richardson testified that Michael was approximately 3 or 4 feet from him and that he overheard Michael tell the other student that he had some "big bags." Richardson testified that Michael did not see him, but that the other student did. Richardson testified that when the other student saw him, the student began to wave Michael off and shook his head as if saying, "Not now." Richardson testified that he then went to the assistant principal and told him what he overheard. Richardson testified that he went to the assistant principal because of Michael's reference to "big bags," which Richardson testified is one of the slang terms high school students use for marijuana.

Richardson testified that upon the assistant principal's instruction, he notified Northwest's administrator, Michael Steele. Richardson testified that Steele told him to bring Michael to his office regarding Michael's statement about having some "big bags." Steele also testified that he understood the term "big bags" to be slang for marijuana. When Richardson arrived with Michael, Steele asked Michael to empty his pockets. Michael complied, and no drugs or paraphernalia were found. Because Michael had keys in his pockets, Steele asked Michael whether he had driven to school. Michael said yes. Steele then told Michael that they would need to go to the parking lot and search his vehicle.

Northwest's student manual, which is distributed to each student at the beginning of the school year, states that if a student is on school property and school officials suspect that the student is in possession of illegal drugs, the student's person, locker, and vehicle would be subject to search by school officials. The evidence shows that after the manual is distributed each year, each student must sign a card verifying that he or she received the manual. Steele testified that because Michael's name was not on a list of students who failed to sign a card, he believed that Michael had signed a card with knowledge of the information contained in the student manual.

The record shows that Steele, Richardson, and Michael went to Northwest's west parking lot, wherein Michael's vehicle was

parked approximately 250 feet from the school. Both Steele and Richardson thoroughly searched Michael's vehicle after Michael unlocked it. During the search, Steele asked Michael to unlock the glove compartment, and Michael did so. In the glove compartment, Steele found a plastic baggie with a substance appearing to be marijuana and a pipe. After he found the items, Steele took them inside the school and contacted Northwest's resource police officer. Later tests determined the substance to be marijuana.

At the hearing, Michael testified that he felt he had no choice but to comply with the searches of his person and his vehicle. Contrary to Richardson's and Steele's testimony, Michael stated that the resource police officer had also been involved in the search of his vehicle.

After the hearing, the trial court overruled Michael's motion to suppress. On July 2, 2002, Michael's adjudication hearing was held. Michael renewed his motion to suppress. The juvenile court, after considering all of the evidence, found that counts I, II, and III of the State's petition were true beyond a reasonable doubt.

Michael appeals.

## ASSIGNMENT OF ERROR

Michael's sole assignment of error on appeal is that the trial court erred in overruling his motion to suppress and admitting into evidence marijuana and drug paraphernalia from an illegal search.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002).

## ANALYSIS

On appeal, Michael argues that the school officials' search of his vehicle on school grounds violated the bounds of reasonableness in school searches as set out in *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).

In *T. L. O.*, the U.S. Supreme Court reviewed whether the Fourth Amendment to the U.S. Constitution applied to an assistant vice principal's search of a student's purse. The assistant vice principal searched the student's purse after discovering the student smoking in the girls' restroom, in violation of school rules. After the student denied smoking, the assistant vice principal asked the student to open her purse. The assistant vice principal found a pack of cigarettes in addition to a pack of cigarette rolling papers. Because he suspected that the papers were related to marijuana use, the assistant vice principal then made a more thorough search of the student's purse. He found marijuana, a pipe, several 1-dollar bills, a list of students who owed the student money, and two letters implicating the student in the sale of drugs.

■ After its review, the Court held that although the Fourth Amendment applies to school officials, the assistant vice principal's search of the student's purse did not violate the Fourth Amendment. The Court balanced the interest of children's privacy with the need to maintain discipline in the school setting and held that warrants are not suited to the school environment. In addition, the Court stated that probable cause was unnecessary and held that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341.

■ In so finding, the Court set out a two-prong test in applying the Fourth Amendment to searches by school officials. First, the school official's action must have been justified at its inception.

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*Id.* at 341-42.

■ Second, the search conducted must have been reasonably related in scope to the circumstances that justified the interference in the first place. A search of a student by a school official "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.

Michael argues that the school officials did not have reasonable grounds to believe that he was violating the law or the rules of the school, since his statements "referring to 'big bags' . . . potentially could [connote] drugs or something legal." Brief for appellant at 6. Secondly, Michael argues that even if the school officials had reasonable suspicion to search his person and items belonging to him within the school, "after finding no evidence the school expanded the search to include [Michael's] locked vehicle in the school lot." *Id.* at 6-7. Michael contends that the school officials' search of a locked compartment in Michael's vehicle was impermissible in its scope.

The trial court found that Richardson's overhearing of Michael's conversation with another student about "big bags" provided reasonable suspicion that Michael was in violation of school policy and reasonable suspicion that the contraband marijuana was on school property. The trial court stated that the search conducted thereafter was reasonably related to that reasonable suspicion of a violation. We agree. Because Nebraska has not previously addressed this issue, we look to other jurisdictions having applied the Fourth Amendment to a search of a student's vehicle on school property.

In *Covington County v. G.W.*, 767 So. 2d 187 (Miss. 2000), a teacher sent a note to an assistant principal advising him that a student had informed her that another student, G.W., then 17, was drinking beer in the school parking lot. The assistant principal then informed the principal. The principal and a school security officer then went to the parking lot and found empty beer cans in the back of G.W.'s truck. Upon their request, G.W. unlocked his truck and allowed the principal and security officer to search it. The principal and the security officer found seven unopened bottles of beer in a locked toolbox. After the principal questioned him, G.W. admitted that the beer was his and that he had purchased it in Covington County, Mississippi.

At trial, G.W. argued that school officials were required to get a search warrant before they searched his truck. The court disagreed, stating first that under *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985), a search warrant is not required when a search is being conducted by a school officer. Additionally, the court noted that the evidence

showed that all students who drove vehicles to school had to register their vehicles. G.W.'s mother signed his truck's registration form, which specifically stated that " 'vehicles will be routinely checked/searched.' " *Covington County*, 767 So. 2d at 193.

G.W. also argued that students have a greater expectation of privacy in their vehicles as compared to their lockers. The court dismissed G.W.'s argument, stating, "While this may be true when one is driving down the street, we can hardly say such a higher expectation of privacy should be had in a car on school property as opposed to a school locker." *Id.*

The Colorado Supreme Court and the Alaska Court of Appeals reached the same result in cases on similar facts. See, *People in Interest of P.E.A.*, 754 P.2d 382 (Colo. 1988); *Shamberg v. State*, 762 P.2d 488 (Alaska App. 1988). See, also, *Linke v. Northwestern School Corp.*, 763 N.E.2d 972 (Ind. 2002) (holding that school's policy of conducting random drug testing on students participating in athletics and extracurricular and cocurricular activities and on students wishing to drive themselves to and from school did not violate search and seizure clause).

The facts in the instant case are very similar to those in *Covington County, supra.* The record shows that Northwest distributes a student manual to all students at the beginning of the school year. The manual states that if a student is on school property and school officials suspect that the student is in possession of illegal drugs, the student's person, locker, and vehicle can be searched by school officials. Steele testified that every student was required to sign a card stating that he or she received the 2001-02 manual. Steele testified that Michael had signed a card verifying his receipt of the manual.

Richardson testified that he overheard Michael telling another student that he had some "big bags." Both Richardson and Steele testified that "big bags" is a slang term for marijuana. Richardson testified that when the other student observed him nearby, the other student waved Michael away and shook his head, indicating that then was not a good time. Additionally, when questioned, Michael admitted speaking about bags to the other student. Clearly, on this record, school officials had a reasonable suspicion that Michael was violating both the law and school policy.

Thus, the actions of the school officials in this case were justified at their inception.

Similarly, the officials' searches of Michael and his vehicle were permissible in scope, since those measures were reasonably related to the objectives of the searches and were not excessively intrusive in light of Michael's age and sex and the nature of Michael's suspected infraction, the sale of illegal drugs. When the officials searched Michael, he did not have any drugs or paraphernalia on his person. Michael did have a set of car keys on him, and he stated that he had driven to school. Because the officials found nothing on Michael's person, it was reasonable for the officials to have a suspicion that Michael had contraband in his vehicle. Thus, as did the Mississippi Supreme Court regarding the search of G.W.'s truck in *Covington County v. G.W.*, 767 So. 2d 187 (Miss. 2000), we conclude that the search of Michael's vehicle did not violate the Fourth Amendment. Because we find that Michael's Fourth Amendment rights were not violated, we need not address the issue of whether Michael consented to the search as argued by the State.

## CONCLUSION

Given our review of the evidence, the trial court did not err in overruling Michael's motion to suppress and allowing into evidence the marijuana and drug paraphernalia found by school officials in Michael's vehicle in the school parking lot. Thus, the trial court's order is affirmed in all respects.

AFFIRMED.