IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF DANA H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF DANA H., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DANA H., APPELLANT.

Filed December 1, 2015.    No. A-15-246.

Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Chelsie Krell for appellant.

Joe Kelly, Lancaster County Attorney, and Maureen E. Lamski for appellee.

MOORE, Chief Judge, and IRWIN and INBODY, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Dana H. (Dana) appeals the order of the separate juvenile court of Lancaster County overruling his motion to suppress evidence obtained during a warrantless search of his backpack and adjudicating him as a child within the meaning of Neb. Rev. Stat. § 43-247(1) for having "possession, custody, or control" of a switch-blade knife in violation of the Lincoln Municipal Code. Because we find that the search of the backpack was reasonable under the circumstances, we affirm.

- 1 -

BACKGROUND

On September 24, 2014, Nancy Seim, a Special Education Coordinator at a Lincoln middle school, conducted a warrantless search of Dana's backpack. A switch-blade knife was found by Seim in the backpack as a result of this search.

On October 16, 2014, the State filed a supplemental petition in the separate juvenile court of Lancaster County, Nebraska, alleging that Dana was a child within the meaning of Neb. Rev. Stat. § 43-247(1) in that Dana had in his possession, custody, or control of a switch-blade knife in violation of Lincoln Municipal Code § 9.36.040.

On October 31, 2014, Dana entered a denial on the Petition. On November 14, 2014, Dana filed a motion to suppress "any and all items of evidence resulting from the seizure and warrantless search," asserting that Seim's search was unjustified at its inception and unreasonable in scope under the circumstances leading to the search, and therefore was conducted in violation of the Fourth Amendment.

A hearing on the motion to suppress was held on November 24, 2015. Seim was the only witness to testify at this hearing. A photograph of the switch-blade knife was also received in evidence.

Seim testified that on September 23, 2014, the day before the search in question was conducted, Dana slept through all of his classes, which is considered to be a truancy. As a result, an "administrative decision" was made to have Dana sit at a desk outside of Seim's office on September 24, where she and other teachers helped him throughout the day. Seim testified that teachers expressed concerns regarding Dana's behavior that day. These concerns mostly involved Dana's lack of compliance in completing his homework, along with a few expressions of aggression and anger.

Dana had his backpack and all of his belongings with him so that Seim could assist Dana with his homework during the course of the day. Seim testified that at the end of the school day, she picked up Dana's backpack in order to get him organized so that he knew what he had to take home and what he had to do for the next day. When Seim then set the backpack down on the counter, she heard a "clunk" sound. Seim further testified that because the backpack "clunked like there was something in there that shouldn't have been in there," and such a sound "was not what a backpack should sound like," she proceeded to open the backpack. Seim indicated that she was not planning on searching the backpack until she heard the noise, which she further described as sounding like a hard object. Seim stated that the clunk noise was too loud to sound like an electronic device.

Upon opening the backpack, Seim found three bottles of cologne. Seim testified that pursuant to school policy a student "can have one item (of cologne), and it's usually allowed in the locker room after their shower." Furthermore, she stated that cologne is not allowed in a student's backpack. Seim removed the bottles of cologne from Dana's backpack, and underneath discovered the switch-blade knife. Seim then called Dana's mother and law enforcement.

Seim testified that at the beginning of the school year, a notice is sent to parents concerning what items are and are not allowed at school, and what may or may not be carried in a backpack. With regard to cologne, the notice provides that one bottle may be kept in the locker room. Further,

the notice provides that the school has the right to search a student's locker, backpack, or person if there is a concern or report of wrongdoing.

After conducting the hearing on the motion to suppress and taking the matter under advisement, the juvenile court overruled Dana's motion to suppress on January 9, 2015. The juvenile court held that "the search was reasonably related to the circumstances justifying the opening of the backpack, permissible in its scope, and reasonably related to the objectives of the search."

A formal hearing on the supplemental petition was held on February 11, 2015. The parties entered into a stipulation which provided that if called to testify, Seim would testify consistent with her prior testimony at the motion to suppress hearing. Further, that Officer Hahne, the law enforcement officer who arrived at the scene, would testify consistent with his police report that he made contact with Seim and Dana on September 24, 2014 and examined the knife, which he found "to be a Bench Made black steel handled knife" and "that the blade of the knife is propelled open with a spring or similar mechanism making it a switch-blade knife." The photograph of the knife and the knife itself were also received into evidence.

During this subsequent hearing, Dana once again objected to the introduction of evidence obtained from the search on the basis of a Fourth Amendment violation, reasserting that "the search was not justified at its inception" and "the search was not reasonably related in the scope [sic] to the circumstances that led to the search in the first place."

On February 18, 2015, the juvenile court entered an order adjudicating Dana as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) for violating Lincoln Municipal Code § 9.36.040. The juvenile court reached this holding after finding that the State proved beyond a reasonable doubt that Dana had in his possession, custody, or control a switch-blade knife. See *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007) (holding that when an adjudication is based upon Neb. Rev. Stat. § 43-247(1), the allegations must be proved beyond a reasonable doubt). Dana subsequently perfected his appeal.

## ASSIGNMENT OF ERROR

Dana asserts that the juvenile court erred in overruling his motion to suppress evidence obtained from a warrantless search of his backpack. Specifically, Dana first argues that the juvenile court erred in finding that the search of his backpack was justified at its inception. Second, Dana asserts that even if the juvenile court properly found the search to be justified at its inception, the juvenile court erred in finding that the search was permissible in scope.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). See also, *In re Interest of Michael R.*, 11 Neb. App. 903, 662 N.W.2d 632 (2003). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

Dana asserts that the juvenile court erred in overruling his motion to suppress evidence obtained from the search of his backpack. Specifically, Dana alleges that the juvenile court was incorrect in failing to find that the search was a violation of the protections provided by the Fourth Amendment to the U.S. Constitution and Article I, § 7, of the Nebraska Constitution against unreasonable searches and seizures because Seim's search was (1) unjustified at its inception and (2) impermissible in scope.

The general rule is that warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013). Generally, the Fourth Amendment's prohibition against unreasonable searches and seizures requires a law enforcement officer to have probable cause to conduct a warrantless search without consent. See *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

However, in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985) ("*T.L.O.*"), the U.S. Supreme Court relaxed the Fourth Amendment's reasonableness standard for school searches to balance students' legitimate privacy interests with "the substantial need of teachers and administrators for freedom to maintain order in the schools." *T.L.O.*, 469 U.S. at 341.

The Court in *T.L.O.* recognized that policy concerns unique to the school setting require a deviation from the warrant requirement and "also requires some modification of the level of suspicion of illicit activity needed to justify a search." *T.L.O.*, 469 U.S. at 340. First, the Court held that "school officials need not obtain a warrant before searching a student who is under their authority." *T.L.O.*, 469 U.S. at 340. Second, the Court determined that the usual requirement of probable cause for searches, even those that may not require a warrant, should not be strictly adhered to in the context of school searches. Rather, "the legality of a search of a student should depend simply on the *reasonableness*, *under all the circumstances*, of the search." *T.L.O.*, 469 U.S. at 340-341 (emphasis supplied). Stated another way, a search of a student's belongings may be justified on the basis of "reasonable suspicion" in light of the surrounding circumstances rather than the more exacting standard of probable cause. *Id.*

The Court in *T.L.O.* utilized the following two-part test, established by the U.S. Supreme Court in *Terry v. Ohio*, to determine the reasonableness of a school search. First, the search must be justified at its inception. Second, the search must be reasonably related in its scope to the circumstances which justified the interference in the first place. *T.L.O.*, 469 U.S. at 341 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889, 905 (1968)).

We address each portion of this two-part test to determine whether the search of Dana's backpack was justified at its inception, and if so, whether it was reasonable in scope.

REASONABLE JUSTIFICATION FOR STUDENT SEARCH

Dana asserts that Seim's search of Dana's backpack was not justified at its inception and therefore violated his Fourth Amendment right against unreasonable search and seizure.

Applying the first prong of the two-part test of reasonableness in the context of a student search, the U.S. Supreme Court held that under ordinary circumstances, a search of a student by a

teacher or other school official is "justified at its inception" when "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-342. Furthermore, "the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . .'" *T.L.O.*, 469 U.S. at 346. Reasonable grounds for a search exist when school officials reasonably believe that there is a moderate chance of discovering evidence of wrongdoing. *J.P. v. Millard Public Schools*, 285 Neb. 890, 913-914, 830 N.W.2d 453, 470 (2013) (citing S*afford Unified School Dist. # 1 v. Redding*, 557 U.S. 364, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009)).

The juvenile court in the present case held that the circumstances, specifically the clunk sound, were sufficient to arise to "a reasonable suspicion that the backpack contained items that were not allowed on school premises." Therefore, Seim's search was "reasonably related to the circumstances justifying the opening of the backpack."

Dana argues that Seim did not have reasonable grounds to believe that he was violating the law or school rules merely by virtue of her "curiosity" regarding the clunk sound, that there are numerous other items that may permissibly be brought into the school that could also make a clunk sound, and that there were no reports that Dana may have been in possession of something in violation of the law or school rules.

Dana attempts to distinguish the facts of this case from other cases where the student search was found to be reasonable. First, Dana points out that in *T.L.O.,* the Court found reasonable a principal's search of a girl's purse for cigarettes after receiving a report from a teacher that the girl had been smoking in the bathroom. *T.L.O.*, 469 U.S. at 346. Dana also cites to our opinion in *In re Interest of Michael R.*, where this court held that the search of a student's car parked on school property was reasonable on the basis of a school officer overhearing a student telling another student that he possessed some "big bags," which the officer understood to be common slang for marijuana. *In re Interest of Michael R.*, 11 Neb. App. 903, 909-910, 662 N.W.2d 632, 637-638 (2003). Dana argues that in the foregoing cases, there was an objective basis for believing the students were violating school rules, whereas in the present case, there was no evidence presented to establish an objective belief that Dana was violating a school rule.

We disagree with Dana's argument. As established above, the standard for reasonable suspicion in a school setting is relatively low. Dana mistakenly seeks to read an "objective basis" requirement into the test for reasonableness, suggesting that this court apply a standard more similar to probable cause than reasonable suspicion. As previously discussed, the typically high standard of suspicion necessary to conduct a reasonable search and seizure was purposefully lowered to account for policy considerations in the school context, specifically to allow school officials more discretion in conducting searches of students on school grounds while providing a reasonable level of protection of students' right to privacy.

It is worth reiterating here that "the legality of a search of a student should depend simply on the *reasonableness*, *under all the circumstances*, of the search," and that such a search is "justified at its inception" when "there are *reasonable* grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *N.J. v. T.L.O.*, 469 U.S. 325, 340-342, 105 S. Ct. 733, 742-743, 83 L. Ed. 2d 720, 734-735

(1985) (emphasis supplied). There is no requirement that the school official's suspicion be based on objective reports of illegal or prohibited behavior or that there exist some other "objective basis" for the search. Indeed, the U.S. Supreme Court in *T.L.O.* found the search of a student to be justified when based upon an individualized suspicion that the student was violating the law or school rules. *N.J. v. T.L.O.*, 469 U.S. at 342, n.8. See, also, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S. Ct. 2386, 2391, 132 L. Ed. 2d 564, 574 (1995).

Seim testified that when she moved Dana's backpack at the end of the day, she heard a "clunk" sound unlike what she would normally expect a backpack to sound like. This sound caused Seim to be suspicious about the backpack's contents (and whether it contained items prohibited by school policy) and she opened the backpack to see what caused this sound.

When considering the significance to be given to the "clunk" sound in determining whether reasonable suspicion existed, our analysis is informed in part by the school rules prohibiting students' possession of certain items, in addition to the notice given by the school of its right to search backpacks.

In determining whether the "clunk" sound and surrounding circumstances were sufficient to raise a reasonable suspicion of wrong doing, it is vital to understand that "the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . .'" *T.L.O.*, 469 U.S. at 346.

Based upon our de novo review of the circumstances of this case, we conclude that there existed a "sufficient probability" that the "clunk" sound from Dana's backpack was produced by a prohibited or illegal item, justifying Seim's initial search of Dana's backpack as being reasonable. Seim's suspicion that the backpack may contain an illegal or prohibited item was not a mere "inchoate and unparticularized suspicion or 'hunch,' rather, it was the sort of 'common-sense (conclusion) about human behavior' upon which 'practical people' -- including government officials -- are entitled to rely." *T.L.O.*, 469 U.S. at 345-346. It was not necessary that Seim be presented with an objective report indicating that Dana may possess an illegal or prohibited item, nor was it necessary that Seim knew with certainty that the "clunk" sound was produced by such an item. It was only necessary that the circumstances surrounding the search indicated a "sufficient probability" of wrongdoing so as to cause Seim reasonable suspicion. It was reasonable for Seim to rationally believe that there was at least a moderate chance of discovering evidence of wrongdoing based on the aforementioned circumstances. See *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 371, 129 S. Ct. 2633, 2639, 174 L. Ed. 2d 354, 362 (2009).

We conclude that Seim's search was justified at its inception and was not a violation of Dana's Fourth Amendment right to privacy. The district court's determination that the search was justified by reasonable suspicion was not in error.

PERMISSIBLE SCOPE OF STUDENT SEARCH

Dana asserts that even if the search of Dana's backpack was justified at its inception, the search was impermissible in scope.

Applying the second prong of the two-part test of reasonableness in the context of a student search, the U.S. Supreme Court held that a search of a student by a teacher or other school official

is permissible in its scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 341-342.

In his brief, Dana argues that if Seim's "curiosity of the 'clunking' sound amounts to reasonable suspicion, it logically follows that she need only have opened his backpack and look [sic] in to determine what had caused the noise." However, Dana asserts that once Seim removed the bottles of cologne, uncovering the switch-blade knife located underneath the bottles, she had expanded her search in such a way that was "not reasonably related to the circumstances that justified her search" and was "excessively intrusive in light of the circumstances."

Upon our de novo review of the record, it is clear that the scope of Seim's search was reasonably related to the original objective of the search and not excessively intrusive. As articulated above, the original objective of the search was to investigate the cause of the suspicious "clunk" sound. The act of opening the backpack was clearly reasonable in light of this objective. Furthermore, the act of removing the cologne bottles, items not allowed in backpacks according to school policy, was not outside the scope of the original justification. It was reasonable within the scope of the search and not excessively intrusive to confiscate the prohibited items.

Having removed the bottles, the knife clearly presented itself. As with the removal of the bottles, the subsequent removal of the switch-blade knife was clearly within the scope and original purpose of the initial opening of the backpack and was done in a manner that was not excessively intrusive.

The knife possession not only violated school policy, but also local law. As established in Lincoln Municipal Code § 9.36.040, the mere "possession, custody, or control" of a switch-blade knife within the city of Lincoln is a crime. Seim's confiscation of the knife, which was apparently in plain view, was in no way excessively intrusive or beyond the justified scope of the search.

Therefore, the juvenile court did not err in finding that Seim's search of Dana's backpack was permissible in its scope and reasonably related to the objectives of the search.

Based on the reasonableness of Seim's actions, both in her initial decision to conduct the search and the limited scope of her search, the juvenile court properly balanced "the need to search against the invasion which the search entails" in finding no violation of Dana's constitutional rights. *T.L.O.*, 469 U.S. at 337.

## CONCLUSION

Upon our de novo review, we conclude that the juvenile court did not err in overruling Dana's motion to suppress, finding that the discovery of the knife was not the product of an unconstitutional search, and subsequently adjudicating him as a child within the meaning of Neb. Rev. Stat. § 43-247(1) for having "possession, custody, or control" of a switch-blade knife in Lincoln, Lancaster County, Nebraska in violation of Lincoln Municipal Code § 9.36.040. We therefore affirm.

AFFIRMED.