Love Signs had a duty to discover any latent defect in the sign that could cause the sign to collapse.

The district court concluded that Love Signs clearly had no duty to inspect, maintain, or care for the sign and pole on Wilkinson's premises. It concluded that Love Signs' obligations were to service the sign and replace lamps and ballasts within the sign. It sustained Love Signs' motion for summary judgment. The district court did not err in sustaining the motion.

## CONCLUSION

Durre's claims against Tri-City are time barred by the statute of repose in § 25-223. There was no fraudulent concealment by Tri-City that prevented Durre from timely filing his claim against Tri-City. Love Signs owed Durre no duty to discover any latent defect in the sign. Therefore, we affirm the judgment of the district court.

AFFIRMED.

McCORMACK, J., participating on briefs.

––––––––––––––

J.P., A MINOR, BY AND THROUGH HIS FATHER AND
NEXT FRIEND, A.P., APPELLEE, V. MILLARD
PUBLIC SCHOOLS ET AL., APPELLANTS.

___ N.W.2d ___

Filed May 17, 2013.    No. S-11-777.

1. **Administrative Law: Schools and School Districts: Appeal and Error.** Appeals from the district court under the Student Discipline Act are governed by the Administrative Procedure Act.
2. **Administrative Law: Final Orders: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
3. **Administrative Law: Judgments: Appeal and Error.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
4. **Constitutional Law: Schools and School Districts: Search and Seizure: Appeal and Error.** In reviewing claims of Fourth Amendment violations in connection with searches conducted by school officials, an appellate court

applies the same two-part standard of review utilized with respect to such issues in criminal cases. Regarding historical facts, the appellate court reviews the trial court's findings for clear error. But an appellate court independently reviews the trial court's determination of whether those facts violated the Fourth Amendment's protections.

5. **Constitutional Law: Warrantless Searches: Search and Seizure: Police Officers and Sheriffs.** The Fourth Amendment's prohibition against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause to conduct a warrantless search without consent.

6. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications.

7. **Schools and School Districts: Search and Seizure: Proof.** There is a two-part test for determining the reasonableness of school searches. First, the search must be justified at its inception. Second, the search must be reasonably related in its scope to the circumstances which justified the interference in the first place.

8. **Schools and School Districts: Search and Seizure: Probable Cause.** Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

9. ____: ____: ____. Reasonable grounds for a search exist when school officials reasonably believe that there is a moderate chance of discovering evidence of wrongdoing.

10. **Schools and School Districts: Search and Seizure.** A search is permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

11. **Schools and School Districts: Statutes: Legislature.** A school district is a creature of statute and possesses no powers other than those granted by the Legislature.

12. **Schools and School Districts: Search and Seizure: Probable Cause.** Implicit within the school-needs exception set forth in *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985), requiring only reasonable suspicion for the search of students on school grounds, is that school officials had the authority to conduct the search.

13. **Schools and School Districts.** On school grounds, school officials have authority to regulate and control student conduct.

14. **Schools and School Districts: Search and Seizure: Motor Vehicles.** Permitting school officials to search a student's vehicle based upon a nexus to the school because a student drove the vehicle to school is overly broad and would lead to confusing inquiries into whether vehicles parked off school grounds were sufficiently connected to the school.

15. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Jeff C. Miller, Duncan A. Young, and Keith I. Kosaki, of Young & White Law Offices, for appellants.

Richard P. McGowan, of McGowan Law Firm, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This case originated from a school official's search of a student's pickup truck that was parked on a public street across from the school. Without permission and in violation of school policy, the student retrieved a wallet and sweatshirt from his truck. When the student returned to school grounds, the assistant principal searched the student's person, backpack, and wallet. The search disclosed only a cellular telephone and a set of keys. Without the student's consent, the assistant principal then searched the truck. Drug paraphernalia was found, and the student, J.P., was suspended for 19 days.

The school board upheld the suspension. On appeal under the Student Discipline Act, Neb. Rev. Stat. § 79-254 et seq. (Reissue 2008 & Cum. Supp. 2012), the district court reversed the school board's decision based on the court's conclusion that the search violated the Fourth Amendment. For the reasons set forth, we affirm.

## SCOPE OF REVIEW

[1] Appeals from the district court under the Student Discipline Act are governed by the Administrative Procedure Act. *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001).

[2,3] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Id.* When reviewing an order of a district court under the Administrative Procedure

Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

[4] In reviewing claims of Fourth Amendment violations in connection with searches conducted by school officials, an appellate court applies the same two-part standard of review utilized with respect to such issues in criminal cases. Regarding historical facts, we review the trial court's findings for clear error. But we independently review the court's determination of whether those facts violated the Fourth Amendment's protections. See *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). The Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by state officers, including public school officials. See, *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995); *New Jersey v. T. L. O*., 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985) (*T.L.O*.). Thus, we conclude that our two-part standard of review is also applicable to claims of Fourth Amendment violations in school search cases.

## FACTS

### Search

On August 18, 2010, J.P. drove his truck to Millard West High School (Millard West). The majority of students parked on school property, but about 15 percent parked along 176th Avenue, which bordered the east side of the campus. J.P. parked on 176th Avenue in front of a private residence located across the street from Millard West.

J.P. arrived at school around 7:45 a.m. and went to his first class. Afterward, he tried to leave the building. Lori Bishop, a hall monitor, saw J.P. and a classmate approach the front door. Bishop asked where they were going, and the classmate said he had to get a book. Bishop allowed the classmate to leave but told J.P. to remain in the building.

Later, a parking lot security person, Dennis Huey, saw J.P. walk from the school building with a female student. Huey drove up next to the two students and asked them where they

were going and why they were outside. They responded that they needed to get some things out of J.P.'s truck. Huey followed them to the truck and observed them until they reentered the building. J.P. testified at the disciplinary hearing that he went directly to his truck from the school building and that Huey watched him walk to the truck, get his wallet and sweatshirt, and immediately return to school.

J.P. and the female student returned through the front doors of the school at 9:46 a.m., and Bishop asked why they had been outside. J.P. took his wallet from his back pocket and said he had to go out and get it. The students said Huey had given them permission to leave the building. However, when Bishop asked Huey whether he gave J.P. permission to leave the building, Huey stated that he had not.

Around 9:50 a.m., Bishop radioed Harry Grimminger, an assistant principal, and reported the incident. Grimminger became suspicious and decided to investigate. A school security guard escorted J.P. to Grimminger's office, and J.P. spoke with Grimminger alone. Even when challenged by Grimminger, J.P. continued to claim he had permission to leave the building.

Grimminger then decided to search J.P.'s person and his truck. He told J.P. to empty his pockets and searched his backpack. J.P. removed his cellular telephone, keys, and wallet and put them on Grimminger's desk. Grimminger did not find any contraband. He returned J.P.'s wallet and cellular telephone, but told J.P. his truck would be searched. When J.P. said his father did not want the truck to be searched, Grimminger responded that J.P.'s father would not make that decision. At Grimminger's request, a school resource officer then joined Grimminger and J.P.

When Grimminger and J.P. reached the truck, J.P. stood in front of the driver's side door and refused to allow the search, but eventually, he moved away from the door. It is clear he did not give his consent to the search, which took about 10 minutes. Grimminger looked under and behind the seats, in the glove box, and in a compartment behind the front seat console. In the console, Grimminger found "a small drug pipe and zigzag papers." In the compartment in back of the console, he

found another drug pipe. He also found cigarettes and lighters in the truck. Once he had completed his search of the truck, he and J.P. returned to the school building. Grimminger searched the two students who were with J.P. earlier, but he found no drug-related contraband.

## School Discipline Proceedings

J.P. and his father were informed by letter dated August 19, 2010, that he had been recommended for suspension but could request a hearing. J.P.'s father requested a hearing, and a hearing examiner was appointed. J.P. was charged with violating §§ III.A. and VI.F. of the district standards for student conduct, which were contained in the "Millard West High School 2010-2011 Student Handbook" (Student Handbook). Section III.A. prohibited "[p]ossession or use of an illegal narcotic drug, controlled substance . . . or possession or use of drug paraphernalia." Student Handbook at 47 (§ III. Violations Against Public Health and Safety). Violation of this section required a 19-day suspension if the violation occurred on school grounds, though the suspension could be reduced in certain circumstances. § III.A.1.a. Legal authorities were required to be contacted. § III.A.1.c. In general, sanctions for conduct off school grounds required a citation or admission by the student to a violation of a particular subsection of the Student Handbook. § III.A.2.a. "'Citation' shall mean a summons to appear in court issued by a law enforcement officer." Student Handbook at 58 (§ IX. Definitions).

"On school grounds" was defined as "on District property, in a vehicle owned, leased, or contracted by the District being used for a school purpose or in a vehicle being driven for a school purpose by a school employee or his or her designee, or at a school-sponsored activity or athletic event." *Id*., § IX.Q. at 59.

Section VI.F. prohibited "[d]isruptive [b]ehavior," which was defined as "[b]ehavior or possession of any item that materially interferes with or substantially disrupts class work, school activities, or the educational process." Student Handbook at 54 (§ VI. Violations Against School Administration).

On August 24, 2010, the hearing officer found that J.P. had committed the charged offenses and that a 19-day suspension was appropriate. He determined that "[t]echnically, the search of the [truck] by the assistant principal was beyond school jurisdiction, since the school boundary, in this situation, ended at the curb." However, the hearing officer found that the search was not simply justified, but required, based on the truck's proximity to the school and the school's obligation to protect the learning environment.

He concluded that the Student Handbook extended school jurisdiction to "'any other place where the governing law permits . . . discipline . . . for prohibited conduct'" and that the truck, on a curb "immediately adjacent" to the school, was "'any other place.'" Section IX.V. of the Student Handbook defined school jurisdiction as

> on District property, in a vehicle owned, leased, or contracted by the District being used for a school purpose or in a vehicle being driven for a school purpose by a school employee or his or her designee, or at a school-sponsored activity or athletic event, or any other place where the governing law permits the District to discipline students for prohibited conduct.

*Id*. at 60 (§ IX. Definitions).

The director of pupil services reviewed the hearing officer's decision. On August 27, 2010, he upheld the suspension, and J.P.'s father requested an appeal. Before the September 29 hearing, J.P. completed his 19-day suspension. He returned to school on September 15. He subsequently asked a committee of the board of education of Millard Public Schools (Board) to remove the suspension from his record. The committee upheld the suspension and did not expunge the suspension from J.P.'s record.

### DISTRICT COURT DECISION

Through his father, J.P. brought an action in the district court for Douglas County under the Student Discipline Act, § 79-254 et seq. The petition alleged, summarized and restated, that the decision of the Board should be reversed because (1) the decision was based on evidence found during

a search that violated J.P.'s rights under the 4th and 14th Amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution; (2) the decision was arbitrary and capricious; and (3) J.P. was charged with a violation for conduct occurring on school grounds when the truck was parked off school grounds.

The district court initially addressed whether the issue was moot because J.P. had already completed his 19-day suspension. It concluded that because J.P. claimed he was innocent of the violations charged and the suspension would be part of his permanent record, he was entitled to have the suspension reviewed on appeal and that, therefore, the issue was not moot.

In addressing the constitutionality of the search of J.P.'s truck, the district court discussed *T.L.O.* It determined that the repeated emphasis on activity occurring on school grounds distinguished *T.L.O.* from the present case, because J.P.'s truck was searched while parked off school grounds.

The district court proceeded to apply traditional Fourth Amendment jurisprudence. It noted that, generally, searches without a warrant are unreasonable under the Fourth Amendment. J.P. did not consent to the search, and Grimminger had no reason to believe contraband or evidence of a crime would be found in J.P.'s truck. There was no indication that J.P. was in possession of drugs or weapons, and school officials had not witnessed J.P. commit any illegal acts.

It recognized that Grimminger's claim that "[J.P.] skipped a class, left the school building without permission, and lied to school officials" allowed Grimminger to search J.P.'s person and belongings out of concern for school safety. However, it concluded that because no contraband was found in the search of J.P.'s person and belongings, Grimminger lacked probable cause to expand the search to the truck. The court concluded the search of J.P.'s truck violated the Fourth Amendment. It reversed the decision of the Board and ordered the offenses and the 19-day suspension removed from J.P.'s school record. The defendants, Millard Public Schools, the Board, and various school officials (collectively the District), appealed. Pursuant to our statutory authority to regulate the dockets of the appellate

courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

The District assigns, summarized and restated, that the district court erred in (1) determining that the search violated J.P.'s Fourth Amendment rights and (2) reversing the decision of the Board.

## ANALYSIS

### BACKGROUND

[5,6] The Fourth Amendment's prohibition against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause to conduct a warrantless search without consent. See *State v. Borst*, 281 Neb. 217, 221, 795 N.W.2d 262, 267 (2011) ("warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications"). Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

[7-10] But in *T.L.O.*, the U.S. Supreme Court relaxed the Fourth Amendment's reasonableness standard for school searches to balance students' legitimate privacy interests with "the substantial need of teachers and administrators for freedom to maintain order in the schools." 469 U.S. at 341. There is a two-part test for determining the reasonableness of school searches. First, the search must be justified at its inception. Second, the search must be reasonably related in its scope to the circumstances which justified the interference in the first place. *Id*.

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student

has violated or is violating either the law or the rules of
the school.

*T.L.O.*, 469 U.S. at 341-42. Reasonable grounds for a search
exist when school officials reasonably believe that there is a
moderate chance of discovering evidence of wrongdoing. See
*Safford Unified School Dist. #1 v. Redding*, 557 U.S. 364, 129
S. Ct. 2633, 174 L. Ed. 2d 354 (2009). A search is permissible
in its scope "when the measures adopted are reasonably related
to the objectives of the search and not excessively intrusive in
light of the age and sex of the student and the nature of the
infraction." *T.L.O.*, 469 U.S. at 342.

### Authority to Search

The District contends that the court erred in applying a prob-
able cause standard to Grimminger's search of J.P.'s truck. It
argues that the court should have applied the reasonable sus-
picion standard for school searches because a probable cause
standard will unnecessarily tie its hands. J.P. asserts that the
court correctly applied the probable cause standard and that
even under a reasonable suspicion standard for school searches,
the search violated his Fourth Amendment rights.

In our consideration of the reasonableness of the search, we
examine the authority of school officials to search J.P.'s truck.
The district court's determination that school officials lacked
probable cause to search the truck implies that school person-
nel had the authority to search the truck if they had probable
cause. The question is whether the school officials had the
authority to conduct a search of J.P.'s truck when it was across
from the school on a public street.

[11] The District is granted its powers by statute. "Every
duly organized school district shall be a body corporate and
possess all the usual powers of a corporation for public pur-
poses . . . ." Neb. Rev. Stat. § 79-405 (Reissue 2008). A school
district is a creature of statute and possesses no other pow-
ers other than those granted by the Legislature. *Robertson v.
School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997).
The Student Discipline Act sets out the permissible disci-
plinary actions that schools can take against students. And it
authorizes disciplinary actions against students for conduct

that occurs on school property, in school vehicles, or at school-sponsored activities.

   Section 79-267 describes student conduct that

   shall constitute grounds for long-term suspension, expulsion, or mandatory reassignment, subject to the procedural provisions of the Student Discipline Act, *when such activity occurs on school grounds, in a vehicle owned, leased, or contracted by a school being used for a school purpose or in a vehicle being driven for a school purpose by a school employee or by his or her designee, or at a school-sponsored activity or athletic event.*

(Emphasis supplied.) That conduct includes "[e]ngaging in the unlawful possession . . . of a controlled substance or an imitation controlled substance . . . ." § 79-267(6). Section 79-267 sets the limits of a school's authority to discipline students for unlawfully possessing a controlled substance. A student may be expelled for unlawful possession of a controlled substance on school grounds, in a vehicle owned by the school and used for a school purpose by a school employee or their designee, or at a school-sponsored activity or athletic event.

   School officials are given no specific statutory authorization to conduct searches. Such authority is implied by the provisions of the Student Discipline Act, which grants school officials the authority to discipline students. School personnel "may take actions regarding student behavior, other than those specifically provided in the Student Discipline Act which are reasonably necessary to . . . further school purposes, or prevent interference with the educational process." § 79-258. But because a school's authority to search is implied by its authority to discipline students to maintain order, its authority to search is also limited by its authority to discipline.

   We recognized that many courts, including the Nebraska Court of Appeals, have expanded *T.L.O.*'s reasonable suspicion standard to a school's search of a student's vehicle parked on school grounds. See, e.g., *Bundick v. Bay City Independent School Dist.*, 140 F. Supp. 2d 735 (S.D. Texas 2001); *Anders ex rel. Anders v. Fort Wayne Commu. Schools*, 124 F. Supp. 2d 618 (N.D. Ind. 2000); *In re Interest of Michael R.*, 11 Neb. App. 903, 662 N.W.2d 632 (2003); *State v. Best*, 403 N.J.

Super. 428, 959 A.2d 243 (2008), *affirmed* 201 N.J. 100, 987 A.2d 605 (2010); *State v. Slattery*, 56 Wash. App. 820, 787 P.2d 932 (1990); *State v. Schloegel*, 319 Wis. 2d 741, 769 N.W.2d 130 (Wis. App. 2009).

The District also cites to federal cases extending the *T.L.O.* standard to school searches conducted while a student was attending a school-sponsored class or activity that was held off campus. See, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054 (8th Cir. 2002); *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075 (5th Cir. 1995); *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987); *Rhodes v. Guarricino*, 54 F. Supp. 2d 186 (S.D.N.Y. 1999).

But none of these cases, nor any that we have found, recognize a right of school officials to conduct off-campus searches of a student's person or property which are unrelated to school-sponsored activities. To the contrary, courts have held that school officials lack authority to conduct such searches.

In *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997), we stated that any action taken by a school board must be through either an express or an implied power conferred by legislative grant. An administrative agency cannot use its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering. *Id*.

In *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 488, 623 N.W.2d 672, 676 (2001), this court stated: "We have long acknowledged that school boards are creatures of statute, and their powers are limited. . . . Any action taken by a school board must be through either an express or an implied power conferred by legislative grant."

Here, the District claims its school officials have the authority to search if they reasonably suspect the student has engaged in conduct that is subject to discipline by the school. It argues that driving to and from school is a school-sponsored activity and is a nexus to the school.

We find that the District's claim of authority is too broad and exceeds the authority given to school personnel pursuant to the Student Discipline Act. In interpreting its state law, one court that has addressed the authority to search off school grounds has rejected a nexus to the school argument.

For example, in *Com. v. Williams*, 749 A.2d 957 (Pa. Super. 2000), a Pennsylvania appellate court rejected the argument that the district makes here: i.e., that a school has the authority to search a student's vehicle parked off campus because the student's conduct in driving to and from school has a nexus to controlling student conduct on campus. There, Pennsylvania law authorized school districts to obtain school police officers. Unless they were specifically granted the same powers as city police, they were limited to issuing summary citations, detaining students until law enforcement arrived, and enforcing good order on school property.

While off school grounds, an officer encountered three students in a car. They made a U-turn, gave the officer "the proverbial finger," and drove off. *Id.* at 958. As expected, the officer confronted the students in the vehicle, which was now parked off school property. After they exited the vehicle, the officer observed a sawed-off shotgun in plain view. He called the city police, but before police arrived, he and other school officers searched the vehicle and found three revolvers in addition to the shotgun. The trial court found the school officer was acting within the scope of his duties even if the incident occurred off school property.

The appellate court disagreed. It concluded that the governing statute "jurisdictionally limit[ed] the School Police Officer's authority to 'in school buildings, on school buses and on school grounds.'" *Id.* at 961. The court declined to expand that authority to include any action that had a nexus to enforcing good order on school grounds. It reasoned that if the search were upheld, city police could obtain the fruits of a search conducted without a warrant or exigent circumstances. It further reasoned that a "'nexus to the school under the totality of the circumstances of the incident' inquiry" would be "nebulous, and would certainly lead to confusion," both for school officials deciding if they had authority to search off school grounds and for courts in deciding if school officials had authority to search and whether a sufficient nexus was present. *Id.* at 962.

Similarly, in *State v. Crystal B.*, 130 N.M. 336, 24 P.3d 771 (N.M. App. 2000), a New Mexico appellate court reversed a

trial court's refusal to suppress evidence obtained by an assistant principal when he had seized a student (appellant) and her belongings off campus. A student informant told the assistant principal that appellant and two other girls had left campus and were smoking cigarettes in an alley. The principal found the girls and ordered them into his car. At his office, a search of appellant's bookbag disclosed a marijuana roach, and appellant was suspended. Appellant was charged on a delinquency petition for possession of marijuana, and the trial court denied her motion to suppress. In reversing, the New Mexico appellate court concluded the reasonableness standard for school searches applied "only in furtherance of the school's education-related goals; that is in a situation where the student is on school property or while the student is under control of the school." *Id*. at 339, 24 P.3d at 774, citing *In re Josue T.*, 128 N.M. 56, 989 P.2d 431 (N.M. App. 1999).

We agree. In *T.L.O.*, the Court recognized that students have a legitimate expectation of privacy, which must be weighed against the interest of teachers and administrators in maintaining discipline within the classroom and on the grounds of the school. The school-needs standard of reasonableness was intended to "ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." *T.L.O.*, 469 U.S. at 343. It was not intended to overlap the authority of law enforcement officers to enforce order on the public streets.

We agree with the Pennsylvania Superior Court that adopting a "nexus to the school" standard would lead to confusing inquiries whether the student's off-campus conduct was sufficiently connected to maintaining school order. And it is not hard to see how a nebulous nexus standard could lead to school officials' gathering evidence for the police even when police officers could not have conducted the search. See *Com. v. Williams*, 749 A.2d 957 (Pa. Super. 2000). Under the district's argument, school officials could search a student's vehicle parked off campus whenever a student had driven the vehicle to attend school and the school had a reasonable

suspicion that a search would show the student had violated the law.

Thus, we believe that under § 76-267(6), the Legislature has wisely limited a school district's jurisdiction to discipline students for possession of a controlled substance to conduct occurring (1) on school property, (2) at a school-sponsored activity or athletic event, or (3) in a vehicle owned or used by the school for a school purpose. We conclude that the school district did not have implied authority to search a student's vehicle parked off campus.

### Search of J.P.'s Truck

The District argues that *T.L.O.* permits the search of J.P.'s truck, because contraband kept in a student vehicle off school grounds still threatens the school environment and it is part of the duty of the District to maintain order and discipline in the school environment. It argues that because the initial search of J.P.'s person and backpack in Grimminger's office was authorized, it could search J.P.'s truck. It claims that because J.P. had keys to the truck, drove to school, broke school rules by accessing his truck, and lied to school officials, Grimminger had a reasonable basis to search J.P.'s truck. But the authority to search the truck is not expanded, because officials could search J.P. at the school.

In support of its claim that it could search J.P.'s truck, the District relies upon *In re Interest of Michael R*., 11 Neb. App. 903, 662 N.W.2d 632 (2003). That case is readily distinguishable. The School Discipline Act specifically recognizes the District's authority to discipline this conduct, which occurred on school grounds. See § 79-267. Michael R.'s vehicle was located in the school parking lot on school grounds. A school official overheard slang indicating that Michael might possess illegal drugs. Michael admitted to speaking to another student about "'big bags,'" a slang term for marijuana. 11 Neb. App. at 905, 662 N.W.2d at 634. Because none of these facts are present in the case at bar, the precedential value of *In re Interest of Michael R*. is limited.

The District also relies on cases in which the search of a student vehicle was found to be reasonable after a personal search

of the student disclosed no contraband. See, *Bundick v. Bay City Independent School Dist*., 140 F. Supp. 2d 735 (S.D. Tex. 2001); *Anders ex rel. Anders v. Fort Wayne Commu. Schools*, 124 F. Supp. 2d 618 (N.D. Ind. 2000); *State v. Best*, 403 N.J. Super. 428, 959 A.2d 243 (2008), *affirmed* 201 N.J. 100, 987 A.2d 605 (2010); *State v. Slattery*, 56 Wash. App. 820, 787 P.2d 932 (1990).

In each case, there was a link between the student and contraband allowing school officials to reasonably suspect that the student possessed contraband. More important, in each case, the student's vehicle was on school grounds when it was searched.

In the case at bar, the district court did not directly address school personnel's authority to search J.P.'s truck. Instead, it found that "Grimminger had no reason to believe contraband or evidence of a crime would be found in [J.P.'s] vehicle" and, therefore, lacked probable cause to search J.P.'s truck. Requiring that school officials have probable cause to search the truck implies that the District had authority to search if it had probable cause.

Within its claim that it had authority to search J.P.'s truck, the District argues that the location of J.P.'s truck is irrelevant because the search of his person and the truck were both reasonable. We disagree. In order for the search to be reasonable, the District must have the authority to search.

[12] Implicit within the *T.L.O.* school-needs exception, requiring only reasonable suspicion for the search of students on school grounds, is that school officials have the authority to conduct the search. It is important to point out that *T.L.O.* did not extend the District's authority to search to a student's vehicle parked off school grounds. See Stuart C. Berman, Note, *Student Fourth Amendment Rights: Defining the Scope of the T.L.O. School-Search Exception*, 66 N.Y.U. L. Rev. 1077 (1991). The expansion of the authority to search beyond the search of a student's person has evolved from various court decisions applying the two-step analysis set forth in *T.L.O.* These courts have extended *T.L.O.*'s reasonable suspicion standard to searches of student vehicles parked on school grounds. See Annot., 31 A.L.R.5th 229 (1995), and cases cited

therein. And Nebraska law does not expressly authorize such a search.

The District cites to federal cases from the Fifth, Sixth, and Eighth Circuits as well as a New York federal district court which have recognized that the *T.L.O.* special-needs exception is not dependent solely on location. See, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054 (8th Cir. 2002); *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075 (5th Cir. 1995); *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987); *Rhodes v. Guarricino*, 54 F. Supp. 2d 186 (S.D.N.Y. 1999). We find that those cases are distinguishable on their facts.

In those cases, the school remained in control of the student and was responsible for the safety of the student during the event. The courts did not address the specific question whether school officials had the authority to search a student vehicle parked off school grounds.

Courts have supported the logical inference that school grounds include the school parking lot. See *State v. Schloegel*, 319 Wis. 2d 741, 769 N.W.2d 130 (Wis. App. 2009), citing Myron Schreck, *The Fourth Amendment in the Public Schools: Issues for the 1990s and Beyond*, 25 Urb. Law. 117 (1993). They have recognized the authority of school personnel to search a student's vehicle parked in the school parking lot. See *State v. Best*, 403 N.J. Super. 428, 959 A.2d 243 (2008), *affirmed* 201 N.J. 100, 987 A.2d 605 (2010).

The District also cites examples in which courts have upheld actions by school officials on school-sponsored trips conducted off school grounds, specifically *Hassan v. Lubbock Independent School Dist., supra*, and *Webb v. McCullough, supra*. But these cases leave unanswered whether the District's authority to search a student's vehicle extends to searches of off-school-grounds vehicles.

As further support of its claim that it could search J.P.'s truck, the District relies upon *Morse v. Frederick*, 551 U.S. 393, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007). We find that case readily distinguishable. The Court held that the student could not claim to be outside the school's authority. The student could not stand in the midst of his fellow students, during

school hours, at a school-sanctioned activity, and claim he was not at school.

The District argues *Morse* establishes that "students cannot claim to be beyond the reach of school authorities simply by stepping off school property . . . when such conduct occurs during school hours and is intimately connected with the school's educational environment." Brief for appellants at 25. It claims that J.P.'s truck was associated with a school-sponsored event because J.P. drove the truck to school, he was attending school under Nebraska's mandatory education law, and the search occurred during school hours.

We disagree. J.P.'s driving to school and parking off school grounds was not a school-sponsored event, nor was it associated with a school-sponsored event. *Morse v. Frederick, supra*, and *Shade v. City of Farmington, Minnesota, supra*, described school-sponsored events. At those school-sponsored events, the school created an environment for students, gave them permission to enter that environment, and took responsibility for their safety in that environment.

But under the facts of this case, parking a vehicle off school property was not a school-sponsored event. The District did not sanction J.P.'s drive to school, give him permission to travel to school in his truck, or take responsibility for his safety while he drove to school. Driving to school and parking off school property is readily distinguishable from the activities in those cases in which courts have allowed school officials to search off-school premises based upon a school-sponsored activity or event. The cases relied upon by the District are distinguishable because they all involved school officials exercising control of the students during a school-sponsored activity or event. In contrast, in *Com. v. Williams*, 749 A.2d 957 (Pa. Super. 2000), which involved the search of an off-school-grounds vehicle, the Pennsylvania Superior Court held that the search was invalid because school officials lacked statutory authority to search.

The District argues a school official's ability to search is based on the relationship between the school official and the student, rather than the location of the search. But this relationship must be examined under the facts of the case. The relevant

conduct (having contraband in the truck) occurred off school grounds. And there was no event that would tie J.P.'s conduct to a school activity. How or when the contraband was placed in the truck is unknown. There was no evidence that the contraband was ever on school property.

[13] On school grounds, school officials have authority to regulate and control student conduct. See, § 79-262; *State v. Best*, 403 N.J. Super. 428, 959 A.2d 243 (2008), *affirmed* 201 N.J. 100, 987 A.2d 605 (2010). They have the authority to discipline students for certain conduct occurring on school grounds. § 79-267. But school officials are not given express or implied authority to search on a public street, at a student's home, or on other premises off school grounds, including an off-school-grounds vehicle that is not associated with a school-sponsored event or activity.

School officials and police officers both enforce order as agents of the state. School officials regulate and control student conduct on school grounds and at school-sponsored events and activities occurring off school grounds. But school officials are not given greater authority than police officers to regulate student activity outside the school context. The court in *Com. v. Williams, supra*, refused to expand statutory authority of school officers in a way that would allow such officers to gather evidence for police that the police could not gather for themselves.

[14] The District urges us to apply an analysis similar to the nexus to the school analysis rejected by *Williams*, arguing it may search an off-school-grounds vehicle because the vehicle is sufficiently connected to the school environment. We decline to adopt this analysis. Permitting school officials to search a student's vehicle based upon a nexus to the school because a student drove the vehicle to school is overly broad and would lead to confusing inquiries into whether vehicles parked off school grounds were sufficiently connected to the school.

The District cannot create the authority to search where none is given by statute. Section 79-267 makes a clear distinction between conduct that occurs on school grounds and conduct that occurs off school grounds. The Student Handbook

recognizes the distinction between "on school grounds" and "off school grounds." But, these definitions do not extend the authority of school officials to search J.P.'s truck parked on 176th Avenue.

Lack of authority to search off school grounds does not leave school officials without a means to deal with student conduct off school grounds. Section 79-293 requires the principal or principal's designee to notify appropriate law enforcement authorities of a student's conduct or act described in § 79-267 which the principal or designee suspects is a violation of the Nebraska Criminal Code. School officials who report an alleged violation are not civilly or criminally liable for reporting such conduct unless the report is false or made with negligent disregard for the truth or falsity of the report. See § 79-293. Succinctly stated, if school officials suspect a student's conduct occurring off school grounds is a violation of the Nebraska Criminal Code, they are required to notify the appropriate law enforcement authorities.

Grimminger's personal search of J.P. disclosed no contraband, and no one claimed to have seen J.P. with contraband or overheard him talking about possessing or selling drugs. School officials had not received a student report or other information that J.P. possessed or was distributing contraband. The contraband was found in J.P.'s truck, which was not in the school environment or under the dominion and control of the school. In short, there is no evidence J.P. possessed drugs or drug paraphernalia on school grounds.

For the search of J.P.'s truck to be reasonable, the District must have authority to conduct the search. The District's authority is based upon the Student Discipline Act, which does not authorize the District to search J.P.'s truck off school grounds unassociated with a school activity or athletic event.

Contrary to the suggestion of the dissent, our recognition of this limitation upon the authority of school officials will not permit students to "violate important school rules without consequence" or "hide" from school authority, nor will it impair the ability of school officials to maintain a safe environment. The facts of this case demonstrate the fallacy of the dissent's suggested "parade of horribles." As the dissent

acknowledges, the misconduct at issue was J.P.'s act of leaving and then reentering the school building with another student without permission to do so. School officials dealt with that conduct by confronting J.P. when he reentered the building and determining that he had no contraband on his person or in his backpack. At that point, school officials had all the information they needed to impose discipline on J.P. for his unauthorized absence. And they knew that J.P. was not endangering the school environment by bringing contraband on campus.

The Legislature has not deputized school officials to act beyond the boundaries of their authority. If they still suspected that there was contraband in J.P.'s truck parked off campus, despite finding none on his person, they should have notified law enforcement authorities, who are trained in the principles of when and how to conduct a lawful warrantless vehicle search.

And *Morse v. Frederick*, 551 U.S. 393, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007), relied upon by the dissent, has no application. In that case, no search took place. At a school-sponsored event, the student was disciplined for displaying a banner promoting drug use. The student could not stand in the midst of his fellow students during school hours at a school-sanctioned activity and claim he was not subject to school rules.

### Remedy

The district court ordered that the offenses of possession of drug paraphernalia and disruptive behavior be removed from J.P.'s record. We review the district court's decision to determine whether it conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001). The search of J.P.'s truck was invalid, and therefore, the only question remaining is whether the district court's decision ordering removal of the offenses from J.P.'s record was an appropriate remedy.

"The court may . . . reverse or modify the decision [of the board] if the substantial rights of the petitioner may have

been prejudiced because the board's decision is . . . [i]n violation of constitutional provisions." § 79-291(2)(a). The Student Discipline Act specifically grants the district court the power to reverse the Board's decision if J.P.'s constitutional rights were violated. See *Kolesnick v. Omaha Pub. Sch. Dist.*, 251 Neb. 575, 558 N.W.2d 807 (1997). The district court exercised that power and reversed the decision of the Board.

Here, however, the search of J.P.'s truck was unauthorized and violated J.P.'s Fourth Amendment right to be free from unreasonable searches. J.P. had served his suspension by the time the district court issued its ruling. Removing the offenses from J.P.'s record was the only meaningful relief the court could grant. The court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

### REMAINING ARGUMENTS

The district court ordered that the suspension for alleged disruptive behavior be removed from J.P.'s record. The disruptive behavior charge and suspension were based upon the intervention required by school officials and were not dependent on the search of the truck.

[15] The District claims the court erred in reversing the suspension upheld by the Board. The District has not argued the issue of suspension based upon J.P.'s disruptive behavior on appeal. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). Therefore, we do not consider whether the district court erred in ordering the offense of disruptive behavior removed from J.P.'s school record.

Based on our resolution of this case, we do not address the parties' remaining assignments of error.

### CONCLUSION

For the reasons set forth herein, we affirm the district court's order which reversed the decision of the Board and ordered the suspension and offenses expunged from J.P.'s school record.

AFFIRMED.

HEAVICAN, C.J., dissenting.

I respectfully dissent from the majority's finding that the school district did not have authority to search J.P.'s vehicle, which was parked directly adjacent to the school. I would find that the school had the statutory authority to discipline J.P., that such disciplinary authority included the power to search both J.P.'s person and his vehicle, and that the search should be measured by the reasonable suspicion standard set out in *New Jersey v. T. L. O.*[1] I would remand this cause to the district court to determine if the school had reasonable suspicion to search J.P.'s vehicle.

## FACTUAL BACKGROUND

On the day of the search at issue, J.P. arrived at school around 7:45 a.m. and went to his first class. Afterward, he tried to leave the building. Lori Bishop, a hall monitor, saw J.P. and a classmate approach the front door. Bishop asked where they were going, and the classmate said he had to get a book. Bishop allowed the classmate to leave but told J.P. to remain in the building.

Later, Dennis Huey, a parking lot security staff member, saw J.P. walk from the school building with a female student. Huey drove up next to the two students and asked them where they were going and why they were outside. They responded that they needed to get some things out of J.P.'s vehicle. Huey followed them to the vehicle and observed them until they reentered the building.

J.P. and the female student returned through the front doors of the school at 9:46 a.m., and Bishop asked why they had been outside. J.P. took his wallet from his back pocket and said he had to go out and get it. The students said Huey had given them permission to leave the building. However, when Bishop asked Huey whether he gave J.P. permission to leave the building, Huey replied that he had not.

Following these events, a school official searched J.P.'s person and extended the search to his vehicle. The search of the vehicle revealed that J.P. had marijuana in his vehicle.

---

[1] *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).

*NEW JERSEY v. T. L. O.*

The U.S. Supreme Court discussed school-related searches in the case of *T. L. O.*,[2] in which the Court fashioned the standard for assessing the legality of searches conducted by public school officials. Of course, the Fourth Amendment's prohibition against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause to conduct a warrantless search without consent.[3] But in *T. L. O.*, the Court relaxed the Fourth Amendment's search-and-seizure standard for school searches in an effort to balance a student's legitimate privacy interests with the substantial need of teachers and administrators to maintain order in the schools.[4]

*T. L. O.* established a two-part test for determining the reasonableness of school searches. First, the search must be justified at its inception. Second, the search must be reasonably related in its scope, considering all of the circumstances which justified the interference in the first place.[5] The Court noted:

> Under ordinary circumstances, a search of a student by a teacher or school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.[6]

After establishing this school search exception to the Fourth Amendment in *T. L. O.*, the Court applied the exception to the facts of the case, and ultimately upheld the constitutionality of an assistant principal's search of a female student's purse which took place inside the school building during regular school hours.

In *T. L. O.*, the Court did not discuss the boundaries of when and where a school official may utilize his or her authority to

---

[2] *Id.*

[3] *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

[4] *T. L. O.*, *supra* note 1.

[5] *Id.*

[6] *Id.*, 469 U.S. at 341-42.

conduct searches without a warrant or without having probable cause to conduct the search. The Court provided only that the reasonableness of such searches should be determined after considering all of the circumstances of the search.

The case before this court raises the question of the parameters for the use of this authority by school officials. The Nebraska Court of Appeals held in *In re Interest of Michael R*.[7] that pursuant to the U.S. Supreme Court's holding in *T. L. O*., a school official may search a student's vehicle parked in the school parking lot. But no Nebraska court has addressed whether a school official may search a car parked adjacent to the school. This case presents that question.

## MORSE v. FREDERICK

Relevant to the question presented in this case is the Court's decision in *Morse v. Frederick*.[8] Though dealing with the First Amendment, not the Fourth Amendment, the U.S. Supreme Court discussed a school's authority to discipline students. In that case, students at a school-sanctioned and school-supervised event displayed a banner stating "'BONG HiTS 4 JESUS.'"[9] The students had been allowed to gather just off campus during normal school hours to watch the Olympic Torch Relay. The event was sanctioned and supervised by the school. The school principal approved the event as a class trip or social event, and school district rules stated that district conduct rules applied to such events.

The principal interpreted the banner as promoting illegal drug use. When she directed the students to take down the banner, one of the students who had brought the banner to the event refused to do so and was suspended.

The Court held on these facts that students could not claim to be beyond the reach of school authorities simply by stepping off school property when such conduct occurs during school hours and is intimately connected with the school's educational

---

[7] *In re Interest of Michael R*., 11 Neb. App. 903, 662 N.W.2d 632 (2003).

[8] *Morse v. Frederick*, 551 U.S. 393, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007).

[9] *Id*., 551 U.S. at 397.

environment.[10] The Court concluded that the student in *Morse* could not stand in the midst of his fellow students, during school hours, at a school-sanctioned activity, and claim he was not at school or subject to school rules.[11]

### FEDERAL COURT JURISPRUDENCE: SCHOOL SEARCHES AT SCHOOL-SPONSORED EVENTS OR ACTIVITIES

Although the U.S. Supreme Court has not specifically addressed whether the *T. L. O.* school search exception to the Fourth Amendment is dependent on a school official's or a student's location, various federal courts have further interpreted *T. L. O.* to conclude that a school official has authority to search a student outside of the traditional boundaries of school property.

As the majority acknowledged, the Fifth, Sixth, and Eighth Circuits, as well as a New York federal district court, have recognized that the school search exception to the Fourth Amendment is not dependent on the location of a school official or student.[12] These courts note that at events such as local school-sponsored field trips or school-sponsored out-of-state travel, school officials maintain the authority to search students pursuant to the reasonable suspicion standard of *T. L. O.*

During such events, it is incumbent upon school officials to watchfully maintain student safety in unstructured environments different from the school buildings.[13] At events that take place off school campus, but are school sponsored, the school remains in control of the students and is responsible for the safety of the students during the event.[14] Thus, at the events described in these cases, the school officials retained

---

[10] *Id.*

[11] *Morse, supra* note 8.

[12] *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054 (8th Cir. 2002); *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075 (5th Cir. 1995); *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987); *Rhodes v. Guarricino*, 54 F. Supp. 2d 186 (S.D.N.Y. 1999).

[13] *Webb, supra* note 12.

[14] *Shade, supra* note 12.

their authority to search students because they maintained their authority to discipline and protect the students.

## STATUTORY AUTHORITY TO SEARCH
## STUDENTS IN NEBRASKA

Implicit within the school search exception to the Fourth Amendment that requires only reasonable suspicion for the search of students is that school officials have the authority to conduct the search. The majority correctly analyzed where this authority comes from in Nebraska. Pursuant to Neb. Rev. Stat. § 79-267 (Cum. Supp. 2012), the Legislature circumscribed a school district's jurisdiction to discipline students. Section 79-267 describes student conduct that

> shall constitute grounds for long-term suspension, expulsion, or mandatory reassignment, subject to the procedural provisions of the Student Discipline Act, when such activity occurs on school grounds, in a vehicle owned, leased, or contracted by a school being used for a school purpose or in a vehicle being driven for a school purpose by a school employee or by his or her designee, or at a school-sponsored activity or athletic event.

Thus, a school district may discipline students for conduct occurring (1) on school property, (2) at a school-sponsored activity or athletic event, or (3) in a vehicle owned or used by the school for a school purpose.[15] School officials are given no specific statutory authorization to conduct searches under this statutory scheme. Rather, such authorization is understood to be granted pursuant to the provisions of the Student Discipline Act, which provides school officials with the authority to discipline students.[16]

## APPLICATION OF § 79-267
## TO THIS CASE

The majority found that the conduct in this case did not occur "on school property" and that thus, the school did not have the authority to search J.P.'s vehicle. It alternatively found

---

[15] § 79-267.

[16] *Id.*

that the conduct did not occur "at a school-sponsored activity" wherein the school was exercising control of J.P. Thus, the majority found inapplicable federal case law jurisprudence extending school officials' authority to search students at off-campus, school-sponsored activities.

I disagree with the majority's conclusions and instead find that this is both a school property and a school activity case and that the school had authority to search J.P.'s vehicle. Most of the pertinent suspicious activity in this case occurred on school property. During regular school hours, students at the high school do not have permission to leave the school. The "Millard West High School 2010-2011 Student Handbook" provides, under the "Attendance Procedures" section at page 6, as follows:

> Students Leaving the Building During the School Day
>
> Any student leaving the building during the school day must be in possession of an authorized pass issued by the attendance office. Students will exit through the front door and display the pass for a security staff person when leaving.
>
> Any student choosing to leave the building without a pass from the attendance office will be subject to disciplinary action.

Here, while on school property during regular school hours, J.P. lied to school officials on multiple occasions and J.P. exited the school without authorization and reentered the school on two separate occasions. During all relevant and material times, the school maintained control over J.P. As J.P. exited the school without authorization to access his vehicle and then returned to the school, the school was responsible for J.P.'s safety and maintained the ability to discipline J.P. This is so because J.P.'s conduct occurred at the ultimate school-sponsored activity—attending school during regular school hours.

The school's responsibility for J.P. was the same as if he was at a school-sponsored activity or event held off campus.[17] Also, at all times during the suspicious conduct of this case,

---

[17] See cases cited *supra* note 12.

the school remained not only in control of J.P. but also the rest of the student population affected by his conduct.[18]

This reading of the statute is compatible with the balanced approach to student discipline set out in *T. L. O.* and the federal case law jurisprudence allowing searches of students off school property while students remain under the protection and disciplinary authority of school officials. Moreover, as J.P.'s conduct occurred during school hours and was intimately connected with the school's educational environment, it is logical to conclude the school maintained its authority to discipline J.P. during his conduct.[19]

Although we think of school-sponsored activities as being basketball games, speech contests, or field trips held off school grounds, it is not a strained reading of § 79-267 to suggest that the classes and activities occurring during a regular school day are "school-sponsored activit[ies]." The majority's suggestion that "J.P.'s driving to school and parking off school grounds was not a school-sponsored event, nor was it associated with a school-sponsored event," ignores the obvious. Although it is true that J.P. drove the vehicle to school and parked it off school grounds, this is not the activity which placed J.P. under the school's control, protection, and authority. The activities of emphasis here are (1) J.P.'s act of exiting the school without permission, (2) J.P.'s decision to bring another student to his vehicle, and (3) J.P.'s reentrance into the school. It is undeniable that J.P.'s conduct occurred during regular school hours and was subject to the rules of regular school day attendance and that J.P. associated his vehicle with his conduct.

When considering the school's authority to search vehicles parked in the school parking lot versus vehicles parked off campus, location may be a determinative factor regarding student's privacy rights.[20] In this case, however, J.P. associated his vehicle with his unauthorized exit and reentrance into the

---

[18] *Id.*

[19] *Morse, supra* note 8.

[20] See, e.g., *State v. Crystal B.*, 130 N.M. 336, 24 P.3d 771 (N.M. App. 2000); *Com. v. Williams*, 749 A.2d 957 (Pa. Super. 2000).

school. In turn, J.P. changed the status of privacy rights he had in his off-campus vehicle by associating it with a school-sponsored activity. As such, the fact that J.P.'s vehicle was parked adjacent to the school, rather than in the parking lot, is not the material factor in determining whether the school had authority to search the vehicle.

As the suspect conduct in this case occurred both on school property and at a school-sponsored activity, I would find that the school had authority to regulate and control J.P.'s conduct and to discipline J.P for such conduct. Thus, the school had authority to search J.P. and J.P.'s vehicle, which vehicle was inherently associated with J.P.'s conduct of exiting and reentering the school building without permission.

### PUBLIC POLICY

It is a fundamental understanding and expectation of parents and citizens that schools will provide a safe environment for students to learn and develop into productive adults. In today's world, that especially means that parents and citizens expect schools will be drug free and gun-violence free. The School Disciplinary Act includes specific references of the duties of schools in regard to guns and in regard to providing a safe environment for students.[21]

The majority's opinion allows students to violate important school rules without consequence. It permits students to hide from authority simply by parking their vehicles across the street. And finally, the majority opinion lessens school officials' ability to provide students with a safe, structured environment during regular school hours.

### CONCLUSION

For all of the above reasons, I would remand this cause to the district court to measure the search of J.P.'s vehicle using the reasonable suspicion standard set out in *T. L. O.*[22]

---

[21] §§ 79-262 and 79-263.

[22] *T. L. O., supra* note 1.