# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:            2018AP1730-CR

† Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**BLONG SIMBA VANG,**

**†DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 27, 2021 |
| Submitted on Briefs: | November 17, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark A. Schoenfeldt*, Glendale. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Scott E. Rosenow*, assistant attorney general. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 27, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1730-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF292

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

BLONG SIMBA VANG,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 SEIDL, J. Blong Vang appeals a judgment of conviction, following his guilty plea, on one count of conspiracy to commit child abuse—intentionally

cause bodily harm, contrary to WIS. STAT. §§ 948.03(2)(b) and 939.31 (2019-20).[1] Vang was arrested after law enforcement discovered weapons in his vehicle located in an Appleton East High School (Appleton East) parking lot. The circuit court denied Vang's motion to suppress evidence of the weapons and statements he made after his arrest. In doing so it relied upon the reasonableness standard articulated in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). That standard permits the search of a student on school grounds without probable cause or a warrant if the search is reasonable under all of the circumstances. Reasonableness of a search under this standard is determined using a two-part test: (1) the search must be "justified at its inception"; and (2) the search must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341-42 (citation omitted).

¶2      Vang contends that the circuit court erred in determining that his vehicle search was subject to the *T.L.O.* reasonableness standard. Specifically, Vang argues that probable cause was needed to search his vehicle because Vang was not a student of the high school, the search was conducted by law enforcement, and the investigation leading to the search was instigated by a school resource officer.

¶3      We conclude that the circuit court properly applied the *T.L.O.* "reasonableness, under all the circumstances" standard to deny Vang's suppression motion. As the federal district court in *United States v. Aguilera*, 287 F.Supp. 2d 1204, 1209 (E.D. Cal. 2003) recognized, the duty of school officials to keep students safe applies equally to threats posed by students or non-students. We therefore

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

conclude that standard applies equally to searches on school grounds of both students and non-students of the school where the search occurs.

¶4    Further, the decision here to search Vang's vehicle was made by school officials, not by law enforcement. Finally, the search was justified at its inception so as to ensure the safety of students, and it was reasonably related in scope to that safety concern. We therefore affirm Vang's judgment of conviction.

## BACKGROUND

¶5    The following facts are taken from testimony at the hearing on Vang's motion to suppress. Jack Taschner, a school resource officer who was employed by Appleton East and not employed by the police, testified that toward the end of the school day on April 13, 2017, he noticed two young men whom he did not recognize as Appleton East students standing in the commons area of the school. The two individuals were wearing hats, which was in violation of the school dress code. Taschner also thought their clothing indicated a gang affiliation. In addition, it appeared to him that the young men had failed to check in at the main office prior to entering the school because they were not wearing visitor badges as required by school policy.

¶6    Taschner approached the two young men and brought them into the school office to inquire about their identities. When Taschner asked the individuals for their student identification, they immediately stated that they were not students. When Taschner contacted dispatch to check for warrants on the individuals, no information was returned on one of them, which led Taschner to believe one of them gave Taschner a false birthdate. Taschner felt the incorrect birthdate resulted either from the male's attempt to divert his questioning, or it was due to Taschner mishearing the information. Taschner eventually received the male's correct

3

birthdate and determined that his name was "Daniel."[2] The other male was identified as "Travis." The school's athletic director, Timothy Zachow, also became involved in the questioning because he had previously served as an associate principal for the school and there were no principals present on campus at the time.

¶7 Travis and Daniel stated that their uncle drove them from Wausau to Appleton East to pick up a student named "Lucy," who was known by school officials to have a history of truancy, verbal altercations with other students, and physical fights. Taschner testified that Travis and Daniel entered the school "to get [Lucy] moving …." Lucy appeared during Taschner's questioning of Travis and Daniel. Zachow also testified that either Travis or Daniel stated they had come from Wausau to beat up an Appleton East student, which Zachow found to be "very concerning."

¶8 When Taschner and Zachow discovered that another person was in a vehicle outside the school, Taschner asked Zachow to "go make contact with that individual." As Zachow began to walk toward a car that was parked in the driveway of the school to make contact with the driver, Lucy ran ahead of him and spoke to the driver. After his discussion with Lucy, the driver, who was later identified as Vang, moved the car from the driveway in front of the school to a parking lot on the side of the school. Thereafter, Vang exited the car and walked toward the front doors of the school where Lucy again said something to him. This communication prompted Vang to begin to walk away from the front of the school. Taschner then approached Vang and asked him to come into the building.

---

[2] Pursuant to WIS. STAT. RULE 809.81(8), we use pseudonyms when referring to juveniles.

4

¶9    Taschner brought Vang into the school office. Both Lucy and Vang informed Taschner that Vang was Lucy's uncle. Taschner thought Vang looked too young to be an uncle. During their conversation, Taschner asked Vang for "his information, date of birth and name." Taschner later determined the date-of-birth that Vang gave him was incorrect because Vang's information was not on file with dispatch. After Taschner "bantered back and forth" with Vang, Taschner was able to properly identify him. Taschner then again asked Vang about being Lucy's uncle, to which Vang gave a mumbled response, and, Taschner ultimately learned that Vang was not Lucy's uncle.

¶10    Taschner requested additional officers to come to the school because of the presence of the individuals, the number of students and staff in the school at the time, and his concern for officer safety. Taschner patted Vang down but did not search him, which left Taschner concerned that Vang remained a potential threat. After officer Craig Rohm arrived at the school, Taschner told Rohm that he wanted to conduct a dog sniff around Vang's car. Taschner testified that he had principal Matthew Mineau's "blanket" permission to conduct drug dog sniffs around vehicles located in the school parking lot. The dog sniff revealed no evidence of drugs.

¶11    Associate principal Michael Slowinski arrived at the school, and Taschner informed him of the situation. Slowinski then discussed with Zachow whether it was necessary to search Vang's vehicle. Slowinski called assistant school superintendent Ben Vogel to obtain additional input concerning a search of Vang's vehicle. At that time, principal Mineau arrived at the school and joined the conversation with Vogel and Slowinski. Taschner was present for only the "very tail end" of that conversation, and his involvement was limited to asking "where they were at[?]" After further discussion, which did not include law enforcement, Mineau told Taschner that he wanted Vang's car searched. Taschner followed

Mineau's request. During the vehicle search, Taschner and Rohm found a gun in the back seat of Vang's vehicle, and another firearm was found in the trunk.

¶12     The State charged Vang with three counts: (1) felony bail jumping; (2) conspiracy to commit physical abuse of a child—intentionally cause bodily harm; and (3) possession of a firearm on grounds of a school. After an evidentiary hearing on Vang's motion to suppress the evidence seized and the statements made as a result of the search of his vehicle, the circuit court denied the motion in a written decision. The court determined that school officials had reasonable suspicion that Vang posed a threat to school safety and that the search was therefore lawful.

¶13     Vang subsequently pled no contest to the conspiracy count,[3] and the felony bail jumping and firearm possession counts were dismissed and read in. Vang was sentenced to three years' initial confinement and three years' extended supervision. This appeal follows.

## DISCUSSION

¶14     This case presents an issue of first impression in Wisconsin: whether the less stringent "reasonableness, under all the circumstances" standard set forth in *T.L.O.* applies to the search of a non-student's vehicle located on school grounds. Absent consent (which is not at issue here), police may conduct a warrantless search of a vehicle only if there is probable cause to believe it contains evidence of criminal activity. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009). In *T.L.O.*, however, the United States Supreme Court held that reasonable searches of students on school grounds do not require a warrant or probable cause. *T.L.O.*, 469 U.S. at 340-41.

---

[3] Despite a plea of no contest, an appeal of the denial of a suppression motion is preserved. *See* WIS. STAT. § 808.03(3)(b).

Rather, the legality of these searches should be assessed based on their "reasonableness, under all the circumstances." *Id.* Determining the reasonableness of this type of search involves a two-part test: (1) the search must be "justified at its inception"; and (2) the search must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341-42 (citation omitted). We have held that the *T.L.O.* reasonableness standard applies to searches of a student's vehicle conducted in a school parking lot. *State v. Schloegel*, 2009 WI App 85, ¶¶16-20, 319 Wis. 2d 741, 769 N.W.2d 130.[4]

¶15     As noted above, under the *T.L.O.* test, the search must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341-42. "[A] search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* This standard requires only a "moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009). Under the second prong of the *T.L.O.* test, "a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 341-42.[5]

---

[4] The State addresses whether the search outside of the school building is permissible under the "reasonableness, under all the circumstances" standard. Whether the search took place inside or outside of the school building is not at issue.

[5] Vang does not contest the second prong of the test as articulated in *T.L.O.*

7

¶16     The reasonableness of a search is a constitutional question of law that we review independently, benefiting from the analysis of the circuit court. *See State v. Angelia D.B.*, 211 Wis. 2d 140, 146, 564 N.W.2d 682 (1997). We will uphold the circuit court's evidentiary and factual findings unless they are against the great weight and clear preponderance of the evidence. *Id.*

¶17     Vang argues that the circuit court should have analyzed the search under the more stringent probable cause standard rather than the reasonableness standard because he was not a student at Appleton East, such that the *T.L.O.* reasonableness standard does not apply. Further, he argues that probable cause was required for the search because it was conducted by law enforcement, and the investigation was instigated by a police officer rather than a school official.

### I. *T.L.O.*'s *Application to Non-Students*

¶18     Vang first contends that the circuit court erred by concluding that *T.L.O.*'s less stringent "reasonableness, under all the circumstances" standard applies to permit the search of a non-student and his vehicle. He claims that "the officer and school officials, acting in concert, employed the standard of lower level of suspicion as a pretext to circumvent the requirement of probable cause" to accomplish a search that would otherwise be illegal.

¶19     In *Angelia D.B.*, Wisconsin recognized the reasonableness standard for school searches adopted by the Supreme Court in *T.L.O.* in order to better enable school officials to maintain safety and order. *Angelia D.B.*, 211 Wis. 2d at 149-51. The *Angelia D.B.* court "recognize[d] the special needs of public school officials to maintain a safe environment, free of disruption and conducive to learning." *Id.* at 156. Additionally, *Angelia D.B.* recognized "the growing incidence of violence and dangerous weapons in schools." *Id.* at 157. Similarly, in *Schloegel*, which extended

the application of the ***T.L.O.*** standard in Wisconsin to school parking lots, we stated that school officials have a "responsibility to keep students safe on school grounds." ***Schloegel***, 319 Wis. 2d 741, ¶¶21-22.

¶20   Other jurisdictions confronting the issue have held that the ***T.L.O.*** standard applies to searches of non-student visitors on school grounds. *See, e.g.*, ***Aguilera***, 287 F.Supp. 2d at 1209. A lower expectation of privacy applies generally on school grounds "because public school administrators have the heightened burden of providing a safe haven for students." ***Id.*** at 1208 (citing ***T.L.O.***, 469 U.S. at 339). Stated differently, "the rationale in ***T.L.O.*** stems from the inherent authority and responsibility of school administrators to provide a safe environment for students." ***Id.*** at 1209. While ***T.L.O.*** addressed that issue as it related to the conduct of students, the "same need for a safe environment" also encompasses the conduct of "non-students." ***Id.***

¶21   We conclude that based upon the rationales in ***Angelia D.B.***, ***Schloegel*** and ***Aguilera***, the ***T.L.O.*** standard should be extended to apply to searches of individuals who are not students of the school at which the search occurs. The federal district court in ***Aguilera*** correctly recognized that the duty of school officials to keep students safe applies equally to threats posed by students and non-students. The ***T.L.O.*** standard exists in large part to assist school officials in maintaining a safe environment for students. In fact, the Court itself in ***T.L.O.*** found that "maintaining security and order in the schools requires a certain degree of flexibility," and "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." ***T.L.O.***, 469 U.S. at 340. This standard applies regardless of that person's status as a student or non-student, at least when the subject of a search is reasonably believed to pose a threat to school safety.

*II. Law Enforcement Involvement*

¶22    Vang next argues that the circuit court erred in applying the first prong of the *T.L.O.* test because its "reasonableness, under all the circumstances" standard "applies to a search conducted on school grounds by a police officer at the request of, and in conjunction with, school authorities." *See Angelia D.B.*, 211 Wis. 2d at 144.  The *T.L.O.* standard does not apply where outside law enforcement officers initiate a search or where school officials act at the behest of law enforcement.  *Id.* at 152.  Here, Vang contends that the search at issue was instigated by Taschner, a school resource officer whom Vang contends was a law enforcement officer. According to Vang, only when it became apparent to Taschner that he did not have probable cause to search Vang's vehicle did school officials become involved as a pretext to permit the use of the lower standard to do "what he was otherwise unable to do:  search [Vang's] vehicle for evidence of a crime."

¶23    Vang further asserts that even in cases in which the Wisconsin Supreme Court applied the "less strict minimal privacy standard to a search of a student," school officials who determined a search was necessary were either "acting on a tip that implicated an individual at the school or, in the case of non-students, taking action to maintain school disciplinary standards."  Vang argues that the search of his vehicle does not fall within either of those scenarios.  Vang further maintains that "school officials manifestly do not have the same relationship with non-students as they do with students."  Vang also asserts that Taschner had no prior information—nor any information developed through the investigation— that Vang or his companions presented any danger to discipline, order, or student safety.  Vang characterizes as "specious" the State's claim that his association with Lucy, who had prior disciplinary issues, raised a concern as to him.  Vang further

contends that his car was "sequestered" away from the others and posed no danger to discipline, order, or student safety.

¶24 We disagree with Vang's contention that the search of his vehicle was initiated by law enforcement. Our supreme court has held that the *T.L.O.* standard "applies to a search conducted on school grounds by a police officer at the request of, and in conjunction with, school authorities." *Angelia D.B.*, 211 Wis. 2d at 144. Additionally, courts have held that this standard applies in situations where "school officials initiate the search or police involvement is minimal" and in "cases involving school police or liaison officers acting on their own authority." *Id.* at 151-52. The *Angelia D.B.* court further noted that "when school officials, who are responsible for the welfare and education of all of the students within the campus, initiate an investigation and conduct it on school grounds in conjunction with police, the school has brought the police into the school-student relationship," and the *T.L.O* standard applies. *Id.* at 155.

¶25 In contrast, the *Angelia D.B.* court noted that courts will apply the probable cause standard when "outside police officers initiate a search or where school officials act at the behest of law enforcement agencies." *Id.* at 152. Stated differently, police acting independently of school officials when conducting a search may cause the *T.L.O.* reasonableness standard to be inapplicable. *Id.* at 155. An investigation initiated and conducted by police that happens to include the search of a public school student usually lacks the "commonality of interests" that exists between teachers and students, therefore making the reasonable grounds standard inapplicable. *Id.*

¶26 The *T.L.O.* standard was properly applied here because the search of Vang's vehicle was deemed necessary by the school principal, rather than by police

officers. Law enforcement officers were not involved in the decision to search Vang's car. As noted above, the search of Vang's car was conducted at principal Mineau's request. The **T.L.O.** reasonableness standard "applies to a search conducted on school grounds by a police officer at the request of, and in conjunction with, school authorities." **Id.** at 144. That is precisely what occurred here. Because the search was initiated by Mineau, the **T.L.O.** reasonableness standard was properly applied to the search of Vang's vehicle.

### III. Application of the **T.L.O.** Standard

¶27     The State argues, and we agree, that the search of Vang's car was justified at its inception for the following reasons. First, the presence of Travis and Daniel raised safety concerns. Taschner, a school district employee, noticed Travis and Daniel, whom he did not recognize, in the school commons area wearing hats in violation of school policy. Travis and Daniel also were violating school policy by failing to check in and receive visitor badges upon entering the school. Additionally, Taschner thought that their clothing possibly suggested a gang affiliation. Zachow also testified that either Travis or Daniel stated they had come from Wausau to beat up an Appleton East student,[6] which Zachow found to be "very concerning" and further supported his safety concerns.

---

[6] Taschner, principal Mineau, and associate principal Slowinski testified that they were not aware of (or did not remember) any threat to harm a student on April 13, 2017. In its written decision, the circuit court acknowledged Zachow's testimony about Travis or Daniel's statement that they had come to Appleton East to beat up a student. The court did not afford that testimony "much weight, however, because all of the witnesses agreed that the ultimate decision over whether to search Vang's vehicle rested with Principal Mineau, and he did not mention the threat of beating up a student when explaining his decision." The State concedes that the planned fight would not be a relevant factor if we were to interpret the court's decision as Mineau being unaware of this planned fight. Vang, however, has not disputed that Mineau was aware of Travis or Daniel's plan to beat up a student, so we will deem Vang to have abandoned the issue. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998).

¶28 Travis and Daniel also indicated that they had come to the school to pick up Lucy, which school officials found to be concerning because of Lucy's prior behavior. Travis and Daniel's association with Lucy, a known disrupter in the school, would naturally raise concerns to school officials about school safety.

¶29 Vang's behavior also raised safety concerns. When Taschner told Zachow to make contact with Vang, who was in his parked car outside of the school, Lucy ran ahead of him to talk with Vang. This action prompted Vang to move his vehicle from the parking lot in front of the school to the side parking lot. After parking his car, Vang approached the front doors of the school. At that time, Lucy again said something to Vang, and he then started to walk away. Those two evasive actions give rise to a reasonable inference that Vang was trying to keep school officials away from the car and reasonably suggest that Vang was trying to hide something. In addition to the suspicious actions noted above, Vang gave Taschner an incorrect birth date, and Daniel may also have done so. Additionally, Lucy and Vang falsely said that Vang was Lucy's uncle.

¶30 All of these facts caused school officials to be concerned for student safety and created reasonable suspicion to search Vang's vehicle. The presence of the non-students in the school to pick up Lucy, coupled with all the individuals' evasive actions reasonably suggested that Vang's car might contain something that may present a safety concern. School officials have a responsibility to protect students and teachers "from behavior that threatens their safety and the integrity of the learning process." *Angelia D.B.*, 211 Wis. 2d at 157. Therefore, the decision to search Vang's vehicle was reasonable at its inception and satisfied the first prong of the *T.L.O.* test. As indicated, Vang does not contest the second prong of the *T.L.O.* test.

13

**CONCLUSION**

¶31    For the reasons explained above, we find that the *T.L.O.* "reasonableness, under all the circumstances" standard applies to searches of people and their property located on school grounds even if they are not students of the school where the search occurs.  The *T.L.O.* standard exists in large part to assist school officials in maintaining student safety.  This standard applies when the subject of a search poses a threat to school safety, regardless of their status as a student of the school or a non-student.  Because school officials reasonably concluded that Vang posed a threat to school safety, it was reasonable to apply the less strict *T.L.O.* standard, rather than requiring probable cause to search Vang's vehicle.  Additionally, because the search of Vang's vehicle was deemed necessary by principal Mineau and law enforcement was not involved in the decision-making, the search was permitted under the *T.L.O.* standard.  We therefore affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.